KAISER v SCHREIBER

Docket No. 244428. Submitted March 11, 2003, at Grand Rapids. Decided September 9, 2003, at 9:00 A M In lieu of granting leave to appeal, the judgment of the Court of Appeals is reversed, and the judgment of the Kent Circuit Court is reinstated, 469 Mich 938.

Scott S. Kaiser brought an action in Kent Circuit Court under the Child Custody Act, MCL 722.21 *et seq.*, against Emily M. Schreiber, seeking joint legal and physical custody of a minor child born to the plaintiff and the defendant, although both parties were married to other individuals at the time of the child's conception and birth. The defendant admitted in her answer to the complaint that the plaintiff is the child's father. The parties stipulated a temporary order of custody granting joint legal custody. Subsequently, the defendant attempted, but did not succeed, in terminating the temporary order. The defendant later moved to dismiss the custody action on the basis that the court lacked jurisdiction over the action because the defendant was married to her husband at the time of the child's birth, and it is presumed under the law that the husband is the father of the child. The plaintiff likewise moved for summary disposition and further moved to amend his complaint to add a claim under the Paternity Act, MCL 722.711 *et seq.* The court, Paul J. Sullivan, J., granted summary disposition in favor of the defendant. The plaintiff appealed.

The Court of Appeals *held*:

The plaintiff had standing under the Child Custody Act to initiate a custody action regarding his daughter because, by the defendant's own admission in her answer and after blood tests, it was undisputed that the plaintiff is the biological father of the child. The defendant's argument that the plaintiff is merely a "third person" not entitled to seek custody under the act fails because the plaintiff asserted, and the defendant admitted, that the plaintiff is the child's father. MCL 722.26c.

The plaintiff was not required to establish his parentage under the Paternity Act, MCL 722.711 *et seq.*, before initiating an action under the Child Custody Act because the issue was not disputed. Even if the plaintiff were required to seek an initial determination of parentage under the Paternity Act, a determination was made in

this case when the trial court entered the parties' stipulated temporary order of custody, which referred to each party as "the other parent." Thus, the trial court had determined that the plaintiff is the father of the child, and that the child was not issue of the defendant's marriage to her husband.

The trial court erred in granting summary disposition in favor of the defendant on the basis that the court lacked jurisdiction over the plaintiff's claim. Moreover, it is irrelevant whether the defendant could properly challenge the plaintiff's standing pursuant to a motion under MCR 2.116(C)(8), because the plaintiff pleaded a claim on which relief could be granted.

On remand, the trial court shall grant summary disposition in favor of the plaintiff regarding standing, and, if necessary, the court shall grant the plaintiff leave to amend his complaint to assert a claim under the Paternity Act. The court shall then resolve the parties' dispute regarding custody, parenting time, and related issues.

Reversed and remanded for further proceedings.

SCHUETTE, P.J., concurring, stated that he concurred with the opinion by Judge SAWYER, and joined in the decision to reverse the order of the trial court, because the Court of Appeals is estopped from ignoring the defendant's own admission, the trial court's stipulated order, and the paternity test, which established the plaintiff's parentage. To do otherwise would deny the plaintiff and similarly situated plaintiffs access to justice.

WILDER, J., dissenting, stated that although he agrees that the trial court erred in granting summary disposition in favor of the defendant on the basis of lack of jurisdiction, he would affirm because the trial court reached the right result. The stipulated temporary order of custody is insufficient to establish that the plaintiff is the father of the child, nor did the plaintiff seek or establish paternity under the Acknowledgement of Paternity Act, MCL 722.1004. Therefore, the plaintiff could not establish a claim under the Child Custody Act as a "parent" of the child, or as a "third person" entitled to seek custody, because the child had never been placed for adoption, and the defendant was not missing or dead. MCL 722.26c. The trial court did not err in denying the plaintiff's motion to amend his complaint to state a claim under the Paternity Act, MCL 722.711 et seq., because the plaintiff did not obtain a prior determination that the child was born out of wedlock and is not the issue of the defendant's husband, as the law presumes. The order granting summary disposition in favor of the defendant should be affirmed on the basis of the plaintiff's failure to state a claim on which relief could be granted.

*Kenneth T. Sanders*, for the plaintiff.

Western Michigan Legal Services (by *Pam Hoekwater*) for the defendant.

Before: SCHUETTE, P.J., and SAWYER and WILDER, JJ.

SAWYER, J. Plaintiff Scott S. Kaiser appeals from an order of the circuit court granting defendant Emily M. Schreiber summary disposition regarding plaintiff's child custody action. We reverse.

It is undisputed that the parties are the biological parents of Maria Jacqueline Schreiber, born on June 16, 1998. Both parties were married to other people at the time of Maria's conception and birth. On June 19, 2001, plaintiff filed the instant action seeking joint legal and physical custody of Maria. Defendant answered through counsel, admitting that plaintiff was Maria's father. The parties then stipulated a temporary order of custody, which granted the parties joint legal custody, defendant physical custody, and provided parenting time for plaintiff. Defendant, however, almost immediately resisted complying with the temporary order. Defendant's counsel withdrew after defendant began filing motions in propria persona to change the terms of the temporary order. Defendant retained new counsel, who moved for summary disposition on the basis that the trial court lacked authority to entertain a custody action where the mother was married at the time of the child's birth.[1] Plaintiff filed a motion for summary disposition, as well as a motion to amend his pleadings to add a claim under the Paternity Act, MCL 722.711 *et seq.*

---

[1] Specifically, defendant moved for summary disposition under MCR 2.116(C)(4) (lack of subject matter jurisdiction), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact).

The trial court granted summary disposition in favor of defendant.

At issue is the applicability of *Girard v Wagenmaker*, 437 Mich 231; 470 NW2d 372 (1991). In *Girard*, the Supreme Court concluded that the Paternity Act grants standing to a putative father to determine the paternity of a child born out of wedlock and that a child is not born out of wedlock if the mother was married at any time from conception to birth unless a court has determined, before the paternity action is filed, that the child is not issue of the marriage. *Id.* at 242-243.[2] Although the Paternity Act was amended after the *Girard* decision, the amendments do not supply a basis for concluding that *Girard* is no longer applicable.

Another aspect of *Girard* that must be considered is the holding that a putative father may not seek a determination of paternity under the Child Custody Act, MCL 722.21 *et seq. Girard* addresses this only briefly and relies on this Court's decision in *Pizana v Jones*, 127 Mich App 123, 127; 339 NW2d 1 (1983), for the proposition that "a proper action to determine paternity should be brought under and governed by the provisions of the Paternity Act." *Girard, supra* at 251. The *Girard* Court concluded that because the plaintiff did not have standing under the Paternity Act to contest paternity, he could not obtain a determina-

---

[2] The continuing validity of *Girard* is not an issue in this case. The Supreme Court recently considered whether a putative father could intervene in a child protective proceeding after the legal father's parental rights were terminated, the legal father having been married to the mother at the time of conception and birth of the child. *In re CAW*, 469 Mich 192; 665 NW2d 475 (2003). Although the majority in *CAW* did not specifically consider the *Girard* case, its reasoning was essentially the same as that in *Girard*. However, other than indicating that a majority of the justices still subscribe to the reasoning in *Girard*, the *CAW* decision is not applicable to the case at bar.

tion under the Child Custody Act that he was the father of the child. The Court further determined that because the plaintiff could not obtain a determination that he was the father of the child, he must be considered a nonparent under the Child Custody Act and his custody claim was barred. *Id.*

Interestingly, the Court in *Pizana, supra,* upheld the trial court's determination of paternity made under the Child Custody Act. Thus, although the *Pizana* Court stated that a determination of paternity should be litigated under the Paternity Act, it nevertheless affirmed the trial court's determination of paternity expressly made under the Child Custody Act.

In any event, what we can conclude is that if defendant had, in lieu of filing an answer in the case at bar, moved to dismiss plaintiff's complaint for a lack of standing in light of *Girard,* the trial court would have been obligated to grant that motion and dismiss the complaint. Plaintiff would have been unable to establish his paternity under the rule in *Girard* and would have been precluded from maintaining a custody action. However, that is not what happened.

Plaintiff's custody complaint alleged that he was Maria's father:

> 3. That the Plaintiff is the father, and the Defendant is the mother, of MARIA JACQUELINE SCHREIBER, born June 16, 1998.

Defendant answered stating "Admitted, upon information and belief."[3] A stipulated temporary order was

---

[3] Additionally, in her motion for summary disposition, defendant admitted to an illicit sexual relationship with plaintiff and that paternity testing in 2000 established that plaintiff is Maria's biological father. Defendant also admits in her brief on appeal that paternity testing established plaintiff as the biological father.

entered. The order included references to the parties as having "temporary joint legal custody of their minor child" and references to "the other parent."

We conclude that because defendant admitted in her answer that plaintiff was the father, the trial court had jurisdiction to entertain the custody action. In reaching this decision, we are guided by this Court's decision in *Altman v Nelson*, 197 Mich App 467; 495 NW2d 826 (1992). In *Altman*, the putative father filed an action under the Paternity Act seeking a determination that he was the biological father of the child born to the defendant mother. The defendant alleged in her answer that she was married at the time of the child's conception and birth, but did not seek dismissal of the complaint. After the completion of blood tests, an order was entered declaring that the plaintiff was the legal father of the child. Custody and visitation issues were resolved. The parties stipulated transferring custody of the child to the plaintiff. Thereafter, the defendant sought to have the entire custody matter dismissed for lack of jurisdiction pursuant to the decision in *Girard*. The trial court agreed that the plaintiff did not have standing in the paternity action and that the trial court had erred in failing to consider the defendant's marital status and its effect on the plaintiff's standing before entering the order of filiation. The trial court declared its earlier orders of filiation and custody to be void ab initio for lack of jurisdiction, vacated the prior orders, and ordered that the child be immediately returned to the defendant.

This Court reversed, disagreeing with the trial court that it was an issue of jurisdiction:

Subject-matter jurisdiction and standing are not the same thing. Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. *Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938); *In re Waite*, 188 Mich App 189, 199; 468 NW2d 912 (1991). The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. *Fox v Martin*, 287 Mich 147, 152; 283 NW 9 (1938); *Waite, supra* at 199. Jurisdiction always depends on the allegations and never upon the facts. When a party appears before a judicial tribunal and alleges that it has been denied a certain right, and the law has given the tribunal the power to enforce that right if the adversary has been notified, the tribunal must proceed to determine the truth or falsity of the allegations. The truth of the allegations does not constitute jurisdiction. *Id.*

There is a wide difference between a want of jurisdiction, in which case the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void, although it may be subject to direct attack on appeal. This fundamental distinction runs through all the cases. *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 544; 260 NW 908 (1935); *Bowie [v Arder*, 441 Mich 23, 49; 490 NW2d 568 (1992)]. When there is a want of jurisdiction over the parties or the subject matter, no matter what formalities may have been taken by the trial court, the action is void because of its want of jurisdiction. Consequently, its proceedings may be questioned collaterally as well as on direct appeal. *Jackson, supra.*

Where jurisdiction of the subject matter and the parties exist[s], errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, do not render the judgment void; until the judgment is set aside, it is valid and binding for all purposes and cannot be collaterally attacked. Once jurisdiction of the

subject matter and the parties is established, any error in the determination of questions of law or fact upon which the court's jurisdiction in the particular case depends is error in the exercise of jurisdiction. Jurisdiction to make a determination is not dependent upon the correctness of the determination made. *Jackson, supra* at 545-546; *Waite, supra* at 200.

If the court has jurisdiction of the parties and of the subject matter, it also has jurisdiction to make an error. *Buczkowski v Buczkowski,* 351 Mich 216, 221; 88 NW2d 416 (1958).

\*          \*          \*

Subject-matter jurisdiction over paternity actions has been conferred by statute on the circuit court. MCL 722.714(3); MSA 25.494(3). *Syrkowski v Appleyard,* 420 Mich 367, 375; 362 NW2d 211 (1985). The circuit court also has subject-matter jurisdiction of custody disputes pursuant to the Child Custody Act. MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*; *Bowie, supra* at 52. [*Altman, supra* at 472-474.]

The *Altman* decision then distinguished jurisdiction from an issue of standing:

In contrast, standing relates to the position or situation of the plaintiff in relation to the cause of action and the other parties at the time the plaintiff seeks relief from the court. Generally, in order to have standing, a party must merely show a substantial interest and a personal stake in the outcome of the controversy. *Rogan v Morton,* 167 Mich App 483, 486; 423 NW2d 237 (1988). However, when the cause of action is created by statute, the plaintiff may be required to allege specific facts in order to have standing. Such is the case in a paternity action. *Girard, supra.* In order to have standing to seek relief under the Paternity Act, plaintiff must allege that the child was born out of wedlock. MCL 722.714(6); MSA 25.494(6). "Child born out of wedlock" is defined as "a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child which the court has

determined to be a child born or conceived during a marriage but not the issue of that marriage." MCL 722.711(a); MSA 25.491(a). [*Altman, supra* at 475-476.]

The *Altman* Court then explained why the plaintiff adequately invoked the trial court's jurisdiction:

> In his complaint, plaintiff alleged that he was the biological father of the female child born to defendant when she was not married. He petitioned for an order of filiation under the Paternity Act. By making such assertions and seeking such relief, plaintiff requested the circuit court to exercise its subject-matter jurisdiction in paternity actions. Plaintiff's failure to plead or prove sufficient facts to support his standing did not deprive the circuit court of subject-matter jurisdiction. [*Id.* at 476.]

The *Altman* Court distinguished that case from *Girard, supra.* The Court noted that in *Girard,* the defendant mother had argued that the plaintiff did not have standing because there had not been a prior determination that the child was born out of wedlock. By contrast, the *Altman* Court noted that the trial court in *Altman* had not resolved the issues of marital status and standing before entering the order of filiation and that the defendant mother had not appealed that decision, raising it three years later. The Court concluded that the plaintiff's allegations were sufficient to invoke the jurisdiction of the trial court and, although the trial court erroneously exercised that jurisdiction, its actions were not void. *Id.* at 477.

Thus, for the reasons discussed in *Altman,* the trial court in the case at bar erroneously granted summary disposition to defendant under MCR 2.116(C)(4).

Turning to the issue of standing, this case differs somewhat from *Altman* in that there the orders of fil-

iation and custody were final orders and too much time had passed to allow relief from judgment on the basis of mistake. *Id.* However, we nevertheless conclude that defendant's admission in her answer that plaintiff is Maria's father is sufficient to confer standing under the Child Custody Act for plaintiff to maintain an action. In doing so, we must look more closely at who may maintain an action under the Child Custody Act and whether parentage must first be established under the Paternity Act, even where parentage is undisputed.

We begin by noting that the Child Custody Act does not specifically limit standing to bring a custody action to parents or any other class of individuals. Rather, it limits the standing of guardians, MCL 722.26b, and third persons, MCL 722.26c, in bringing custody actions. Defendant essentially argues that plaintiff is a "third person" under the custody act and fails to meet the requirements of MCL 722.26c to bring a custody action as a third person. Assuming that plaintiff is a "third person" under the Child Custody Act, defendant's argument is correct.[4]

However, defendant's argument does assume that plaintiff is a "third person" under the Child Custody Act and, in doing so, assumes too much. MCL 722.22(g) defines "third person" as "an individual other than a parent." The term "parent" is left undefined. In any event, plaintiff's complaint alleged that he was Maria's parent, specifically her father. Defendant's answer admitted that he was. Accordingly,

---

[4] Because the child was not placed for adoption with plaintiff, plaintiff could not establish standing under MCL 722.26c(1)(a), and because defendant is not dead or missing, plaintiff cannot establish standing under MCL 722.26c(1)(b).

plaintiff's status was established by admission and he is not a "third person" under the Child Custody Act and, therefore, does not need to establish his standing under MCL 722.26c.

This conclusion is not inconsistent with our decision in *Pizana, supra,* and, by implication, with the Supreme Court's decision in *Girard, supra.* Both those cases involved situations where parentage was disputed, not admitted. To require under the Paternity Act that parentage be established where parentage is undisputed would constitute a waste of judicial resources. More importantly, it would impose a requirement under the Child Custody Act that simply does not exist. Nowhere in the Child Custody Act is there a requirement that parentage be established first under the Paternity Act even if parentage is undisputed. We do not believe that this Court in *Pizana,* or the Supreme Court in *Girard,* was endeavoring to rewrite the Child Custody Act to impose a requirement of first seeking relief under the Paternity Act where the parties were not married to each other but did not disagree regarding the child's parentage. Rather, we believe that the holding in *Pizana* and *Girard* is that, *where the child's parentage is disputed,* that dispute must first be resolved under the Paternity Act and then, assuming a resolution favorable to the father, the parties may proceed to resolve the custody issues under the Child Custody Act.

In applying this rationale to the case at bar, had defendant disputed plaintiff's claim that he is Maria's father, then, under *Pizana* and *Girard,* the paternity issue would have to have been resolved under the Paternity Act. Then, applying the *Girard* decision, the

trial court would have determined that plaintiff lacked standing to establish his paternity under the Paternity Act and the action would have been dismissed. However, once defendant admitted in her answer that plaintiff was Maria's father, that admission removed plaintiff from the definition of "third person" under the Child Custody Act and, therefore, conferred standing under that act to plaintiff to seek custody. Or, more precisely, plaintiff's allegation in his complaint that he was Maria's father of necessity constituted a pleading that he had standing under the Child Custody Act to seek custody and defendant's admission in her answer confirmed that standing.

Moreover, even if defendant were now to challenge plaintiff's status as Maria's father and plaintiff must resort to making a claim under the Paternity Act, or if establishment of parentage under the Paternity Act were required for any other reason, plaintiff now has standing to do so. *Girard* held that the Paternity Act grants standing to a putative father to establish parentage only if the child was born out of wedlock; where the mother is married at any time from conception to birth, the child is deemed born out of wedlock only if a court has determined that the child is not issue of the marriage. That determination must be made before the commencement of proceedings under the Paternity Act. In the case at bar, that determination was made. Plaintiff alleged in his complaint that he is Maria's father, defendant admitted in her answer that plaintiff is Maria's father, and the trial court entered a temporary order that refers to Maria as "their minor child" and refers to each party relative to each other as "the other parent." Such language in the order reflects the court's determination that Maria

is plaintiff's daughter, which, of necessity, reflects a determination that Maria is not issue of defendant's marriage to her husband.[5]

Additionally, plaintiff argues that defendant waived the issue of standing by failing to raise it in her first responsive pleading. If standing must be raised under MCR 2.116(C)(5) (lack of capacity to sue), then defendant clearly waived the issue. A motion under (C)(5) *must* be raised in the party's first responsive pleading or by a motion filed before the first responsive pleading. MCR 2.116(D)(2). Not only did defendant not comply with MCR 2.116(D)(2), defendant did not even move for summary disposition under MCR 2.116(C)(5) (perhaps recognizing that it was too late to do so). Rather, defendant argues that standing may be raised under MCR 2.116(C)(8) (failure to state a claim) as well, citing *McHone v Sosnowski*, 239 Mich App 674; 609 NW2d 844 (2000). While it is true that summary disposition in *McHone* was granted under both MCR 2.116(C)(5) and (8) and that this Court affirmed that grant of summary disposition, the issue whether standing was properly challenged in a (C)(8) motion was not discussed by the Court. The opinion does not reveal whether the Court believed that the plaintiff lacked the capacity to sue or failed to state a claim. Rather, it merely concluded that the plaintiff lacked standing. *McHone, supra* at 680.

It does appear that the *Girard* case was originally decided in the trial court by way of a motion for summary disposition under MCR 2.116(C)(8). See *Girard v Wagenmaker*, 173 Mich App 735, 738; 434 NW2d 227

---

[5] Although the Paternity Act requires a prior court determination that a child is not issue of a marriage, it does not specify any particular form or proceeding in which that determination is made.

(1988). However, the issue of which summary disposition subrule should be used to challenge standing was not specifically determined by either this Court or the Supreme Court.[6] Issues of standing are more commonly considered under MCR 2.116(C)(5). See, e.g., *George Morris Cruises v Irwin Yacht & Marine Corp*, 191 Mich App 409, 411; 478 NW2d 693 (1991), *Altman, supra* at 471, and *Kuhn v Secretary of State*, 228 Mich App 319, 332; 579 NW2d 101 (1998). Furthermore, a conclusion that standing is an issue most properly raised in a motion brought under MCR 2.116(C)(5) is consistent with our decision in *Altman, supra*.[7]

Ultimately, however, it appears that we need not resolve the issue whether standing may be challenged under MCR 2.116(C)(8). Plaintiff did, in fact, state a claim on which relief can be granted. A (C)(8) motion tests the legal sufficiency of the claim as pleaded,

---

[6] And, for that matter, the defendant in *Girard* raised the issue by way of a motion filed before the first responsive pleading. *Girard, supra*, 173 Mich App at 738.

[7] Arguably, *Girard* and *McHone* can be read consistent with using a (C)(8) motion to address this issue for an action under the Paternity Act. That is, if *Girard* is read as holding that, in order to state a valid claim under the Paternity Act, the putative father must allege in his complaint that the child was born out of wedlock, then the failure to do so fails to state a claim (and such a plaintiff cannot truthfully do so where the mother was married to another and there has been no prior court determination that the child was not the issue of that marriage). However, such rationale would still not benefit defendant in the case at bar as it would only make a (C)(8) motion viable for a Paternity Act claim and plaintiff filed his action under the Child Custody Act, for which standing should properly be raised in a (C)(5) motion. Moreover, even allowing a *Girard* standing issue in an action under the Paternity Act to be raised by way of a (C)(8) motion would allow the issue to be raised for the first time after the defendant's first responsive pleading. However, that would not benefit defendant in the case bar. As discussed above, by the time defendant did raise the issue, there had already been a determination that Maria was not the issue of defendant's marriage and, therefore, plaintiff could now state a claim under the Paternity Act.

accepting as true all factual allegations.[8] *McHone,*
*supra* at 676. Plaintiff pleaded that he is Maria's
father and that it was in Maria's best interests for the
parties to have joint legal and physical custody or, in
the alternative, for plaintiff to have sole physical cus-
tody of Maria. That allegation states a claim on which
relief may be granted. As discussed above, the Child
Custody Act does not impose requirements that a
plaintiff must meet in order to establish standing, but
merely imposes restrictions on when guardians and
third persons may bring custody actions. Therefore,
plaintiff did not have to specifically plead the exis-
tence of standing nor do the allegations in his com-
plaint clearly establish a lack of standing. Accord-
ingly, plaintiff's complaint survives a motion under
MCR 2.116(C)(8) and defendant is left to raising the
issue of standing under a (C)(5) motion, which defen-
dant failed to do.

To summarize, the effect of plaintiff's allegations in
his complaint, defendant's admissions in her answer,
and the trial court's temporary order is to establish
that Maria is not the issue of defendant's marriage to
her husband and that plaintiff is her father and not a
"third person" under the Child Custody Act. This con-
fers standing upon plaintiff under the Child Custody
Act and, if need be, under the Paternity Act, despite
the restrictive language of the Paternity Act and the

---

[8] This standard shows why it is tenuous, at best, to allow a standing
issue to be addressed in a (C)(8) motion. Because such a motion accepts
the factual allegations as true, a plaintiff can easily plead the facts neces-
sary to establish standing and, because allegations will be accepted as
true for purposes of a (C)(8) motion, the plaintiff would prevail under
such a motion challenging standing. Therefore, the defendant in such a
case would still have to proceed under a (C)(5) motion in order to factu-
ally challenge the facts surrounding the existence of standing.

*Girard* decision, to seek custody of Maria and establish his paternity. Furthermore, consistent with our holding in *Altman*, the mere fact that defendant could have successfully defeated plaintiff's standing under both the Child Custody Act and the Paternity Act by disputing plaintiff's allegation of fatherhood is irrelevant. By defendant admitting rather than disputing plaintiff's allegation of fatherhood, plaintiff had standing under the Child Custody Act. Furthermore, the trial court's temporary order of custody constituted a determination that Maria is not the issue of defendant's marriage and, therefore, conferred standing upon plaintiff to commence proceedings, if necessary, under the Paternity Act.

Turning to the points raised in the dissent, our colleague, for the most part, merely disagrees with our view of the effects of the allegations in the complaint, defendant's admissions in the answer, and the stipulated temporary order. Some points, however, do merit additional comment. First, the dissent argues that the effect of our opinion is to create two legal fathers for the child. This is simply not true. Once plaintiff was established as the father by operation of the allegations in the complaint, the admission in the answer, and the stipulated order, the presumption of fatherhood in favor of defendant's husband was rebutted. In other words, once the actual father is established by the court, there is no longer a basis for the presumption.

Next, the dissent examines the definition of "parent" in two other statutes. But we are not persuaded that it is appropriate to rely on those definitions to resolve the issues present in this case. First, the dissent reviews MCL 700.2114(1)(a), which is part of the

Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, and which provides that where a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of that child. The statute, however, explicitly provides that this presumption only applies for purposes of intestate succession. Not only does it violate the plain terms of the statute to apply that definition to the Child Custody Act, it also ignores why EPIC would have its own particularized rules regarding the establishment of a parent and child relationship and its own rules regarding contesting or establishing the existence of such a relationship. As a practical matter, the provisions of MCL 700.2114(1)(a) will most likely be relevant only after one or more of the individuals (parent or child) are dead. Thus, the establishment of parentage under EPIC is more complicated than in a custody dispute where the parents and child are most likely alive. From a policy standpoint, the issues involved are significantly different. Under EPIC, the issues are purely financial: how to divide the decedent's assets in the absence of a will (and where there is a motive to claim parentage where none may exist). In a custody dispute, while there are certainly financial components, there are also significant non-financial components such as parenting time, participation in decisions affecting the child, etc. Therefore, it is not unreasonable for the Legislature to treat the issue of establishing parentage differently in the two situations and it is inappropriate to rely on EPIC for guidance in determining the definition of "parent" under the custody act.

Second, the dissent examines § 1(b) of the minors act, MCL 722.1 *et seq.*, which defines "parents" as

including "natural parents, if married prior or subsequent to the minor's birth . . . ." But again, this statute serves a different purpose than the Child Custody Act. The minors act deals with the legal status of minors, the emancipation of minors, and the rights and obligations of parents in the absence of a custody or paternity dispute. It is not unreasonable for this statute to take a different view of the definition of "parent" than where there is a dispute over custody or parentage. Moreover, the statute does not support the dissent's position. MCL 722.1(b) uses the term "natural parents." A husband who is presumed to be the father of his wife's child under Lord Mansfield's Rule as modified by *Serafin v Serafin*, 401 Mich 629; 258 NW2d 461 (1977), is not necessarily the child's "natural parent."

The minors act does not define "natural parents." Accordingly, we turn to the dictionary for a definition. Black's Law Dictionary (5th ed), defines "natural" as follows:

> The juristic meaning of this term does not differ from the vernacular, except in cases where it is used in opposition to the term "legal;" and then it means proceeding from or determined by physical causes or conditions, as distinguished from positive enactments of law, or attributable to the nature of man rather than to the commands of law, or based upon moral rather than legal considerations or sanctions.

Similarly, under the definition of "child," Black's defines "natural child" as follows:

> Child by natural relation or procreation. Child by birth, as distinguished from a child by adoption. Illegitimate children who have been acknowledged by the father.

Turning to more general usage, the *Random House Webster's College Dictionary* (2000), defines "natural," in part, as "existing in or formed by nature" and "related by blood rather than by adoption." Thus, a legal parent is not necessarily a natural parent. And more to the point, because defendant's husband is not the biological father of Maria, he is not her natural parent.

Moreover, the definition in the statute includes the situation where the "natural parents" marry after the birth of the child. That is, if the mother is unmarried throughout gestation, but marries the child's father after the child's birth, then the father is a "parent" under MCL 722.1(b) because the natural parents were married after the child's birth. Under *Serafin, supra,* no presumption of fatherhood arises when the marriage occurs after birth. Thus, the two concepts simply do not work together.

In short, reliance on the minors act actually weakens the dissent's position rather than strengthens it.

Finally, the dissent views this Court's decision in *Terry v Affum,* 233 Mich App 498; 592 NW2d 791 (1998), as rebutting plaintiff's argument that defendant waived her right to challenge plaintiff's standing by failing to raise the issue in her first responsive pleading. *Terry,* however, does not address the issue whether a challenge to standing must be raised in the first responsive pleading and, therefore, does not counter plaintiff's argument that it must be. Moreover, the dissent incorrectly concludes that the reasoning in *Terry* applies to the case at bar. In *Terry,* the parties stipulated visitation by persons who had no legal right to seek visitation. Therefore, the *Terry* Court merely concluded that once the stipulated visi-

tation agreement was revoked, there was nothing for the trial court to enforce because it had no independent basis on which to order third-party visitation. In the case at bar, contrary to the dissent's statement, we do not conclude that defendant *stipulated* that plaintiff was the father and thereafter terminated that stipulation. Rather, we conclude that defendant admitted that plaintiff was the father and thereafter stipulated a temporary custody order. Even if defendant now seeks to change that stipulated order, that does not negate her admission that plaintiff is the father, or that the temporary order had the effect of a determination by the trial court that the child was born out of wedlock.

The grant of summary disposition in favor of defendant is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court shall grant summary disposition in favor of plaintiff on the issue of standing. Further, if the trial court determines that resolution of the issue of paternity is necessary under the Paternity Act despite defendant's admission in her answer, it shall grant plaintiff leave to amend his complaint to add a claim under the Paternity Act. The trial court shall then proceed to resolve the parties' dispute regarding custody, parenting time, and related issues. We do not retain jurisdiction. Plaintiff may tax costs.

SCHUETTE, P.J. *(concurring)*. I join the majority opinion of Judge SAWYER and join in the decision to reverse the order of the circuit court granting defendant Emily M. Schreiber summary disposition regarding plaintiff Scott S. Kaiser's child custody action.

This case concerns whether the undisputed father of a daughter born out of wedlock, whose mother is married to another man, will have an opportunity to establish a custodial relationship with his daughter.

The defendant's claims that the answer is no. The correct answer is yes.

In many respects, the facts and circumstances of this case are sad and troubling. Without a doubt, the outcome of this case, unless reversed by this Court, would be even more discouraging.

Maria is the daughter of Scott Kaiser, the plaintiff and Emily Marie Schreiber, the defendant. Both plaintiff and defendant were married to other people when they had an extramarital relationship. Maria was conceived during this extramarital relationship. Both parties acknowledge this fact openly, which was substantiated by a paternity test.

Maria was born in June of 1998 and has resided with defendant. On June 19, 2001, plaintiff filed a complaint seeking custody of his daughter. On August 10, 2001, a temporary court order granting plaintiff and defendant joint legal custody, permitting plaintiff certain visitation rights and granting primary physical custody to defendant was entered by the circuit court. Subsequently, defendant's original attorney withdrew and defendant filed pleadings in propria persona attempting to terminate the temporary court order. The order was never terminated.

Nothwithstanding a paternity test that established that plaintiff is Maria's father and a judicial imprimatur, a temporary court order stipulated by both parties, defendant contends that plaintiff has no standing to maintain a custody action pursuant to the Child Custody Act, MCL 722.21 *et seq.*, and plaintiff cannot

amend his pleadings to conform to the Paternity Act,
MCL 722.711 *et seq.* Defendant's argument succeeds
only if we ignore both the equities of this case and
the constitutional underpinnings of equal protection
under the law, which surround this case. Were we to
adopt defendant's argument, for a plaintiff like Scott
Kaiser, the doors to the halls of justice would be
locked shut.

This Court is estopped from disregarding the tem-
porary court order outlining the joint custodial
arrangement between the parties and the test that
substantiates plaintiff's paternity, which both parties
freely acknowledge. The defendant argues that plain-
tiff is but a stray actor, an unidentified shadowy fig-
ure who, at best, has a mere biological link with
Maria. No, Scott Kaiser is Maria's father.

Similarly, defendant's strained interpretation of the
"plain meaning" of the Child Custody Act and the
Paternity Act is a tortured journey that leaves plaintiff
a bystander on the wayside of Michigan's statutory
freeways.

Under our system of law, a plaintiff such as Scott
Kaiser, armed with a temporary court order and forti-
fied by a paternity test substantiating his fatherhood,
should have standing to establish a custodial relation-
ship with his daughter. Further, plaintiff should be
permitted to amend his complaint to conform with
the Paternity Act should the trial court deem it
necessary.

By pursuing reversal of the trial court's decision in
this case, Scott Kaiser picked the lock and opened
the doors to the halls of justice. Quite possibly, the
equal protection considerations that are embedded in

the facts of this case may permanently open the door to similarly situated plaintiffs.

WILDER, J. *(dissenting)*. I respectfully dissent.

Plaintiff Scott S. Kaiser filed a complaint seeking joint legal and physical custody of defendant Emily M. Schreiber's then three-year-old minor child. Plaintiff alleged, and defendant agreed in her answer and concedes on appeal, that paternity testing established that plaintiff is the child's biological father. The parties also agree that they have never been married and that when the minor child was conceived and born, defendant was married to someone other than plaintiff. After the complaint for custody was filed, the parties, through their counsel, stipulated the entry of a temporary order granting plaintiff and defendant joint legal custody, granting defendant primary physical custody, and granting plaintiff certain visitation rights. Shortly thereafter, defendant apparently reconsidered her agreement to cede joint legal custody to plaintiff and resisted complying with the temporary order. Defendant's counsel withdrew, and, thereafter, defendant filed pleadings in propria persona attempting to terminate the temporary order. These efforts were unsuccessful.

Defendant obtained new counsel. Defendant's new counsel filed a motion for summary disposition seeking dismissal of plaintiff's complaint pursuant to MCR 2.116(C)(4), (C)(8), and (C)(10).[1] In this motion, defendant acknowledged that during her marriage she

---

[1] During oral argument on the motion, defendant's counsel requested summary disposition under MCR 2.116(C)(8) for plaintiff's failure to state a claim, and MCR 2.116(C)(5) for plaintiff's lack of standing to bring a custody action. Plaintiff did not orally request relief based on MCR 2.116(C)(4).

had an affair with plaintiff, and that plaintiff was the
biological father of a daughter born to her during her
marriage. Nevertheless, defendant asserted that plain-
tiff could not maintain a custody action. Defendant
noted that plaintiff could not produce a notarized
acknowledgement of paternity or a valid order of fili-
ation, and therefore was a third party who was not
entitled to bring an action for custody under MCL
722.26c of the Child Custody Act, MCL 722.21 *et seq.*,
or obtain an order of custody under MCL 722.1004 of
the Acknowledgement of Parentage Act, MCL
722.1001 *et seq.* Defendant further argued from these
undisputed facts that plaintiff could not show that the
child was "a child born out of wedlock" within the
meaning, MCL 722.711(a) of the Paternity Act, MCL
722.711 *et seq.* After oral argument, the trial court
agreed and granted defendant's motion for summary
disposition. The trial court's order specifies that the
motion was granted pursuant to MCR 2.116(C)(4),
(C)(8), and (C)(10).

We review the trial court's grant of summary dispo-
sition de novo on appeal. *Gen Motors Corp v Dep't of
Treasury*, 466 Mich 231, 236; 644 NW2d 734 (2002). A
motion contesting the trial court's jurisdiction under
MCR 2.116(C)(4) may be supported or opposed by
documentary evidence, MCR 2.116(G)(2), and
whether the court has jurisdiction presents an issue
of law reviewed de novo, *Travelers Ins Co v Detroit
Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001).
A motion under MCR 2.116(C)(8) tests the legal suffi-
ciency of the pleadings standing alone and may not
be supported by other evidence. *Spiek v Dep't of
Transportation*, 456 Mich 331, 337; 572 NW2d 201
(1998). A court must grant a motion for summary dis-

position under MCR 2.116(C)(8) if no factual development could justify plaintiff's claim for relief. *Van v Zahorik*, 460 Mich 320, 327; 597 NW2d 15 (1999).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b); *Spiek, supra.* The trial court must consider the evidence submitted in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). If the moving party meets its initial burden, the party opposing the motion must present evidence that a genuine issue of disputed material fact exists, or summary disposition is properly granted. MCR 2.116(G)(4); *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999).

Plaintiff first argues that the trial court erred by confusing standing with jurisdiction. I agree with the majority that the trial court had subject matter jurisdiction over the claims asserted here, and that the trial court erred by citing MCR 2.116(C)(4) as an alternative basis for granting summary disposition in favor of defendant. Nevertheless, I would conclude that this error does not warrant reversal because the trial court reached the right result. *Hall v McRea Corp*, 238 Mich App 361, 369; 605 NW2d 354 (1999).

Next, plaintiff argues that defendant waived the right to challenge his standing to bring this custody action because defendant failed to assert that plaintiff lacked capacity to sue as an affirmative defense in her first response pleading. MCR 2.111(F)(2); MCR 2.116(D)(2). I disagree. In *Terry v Affum*, 233 Mich App 498, 503-504; 592 NW2d 791 (1999), the plaintiff, the father of the minor child, and the defendants, the

child's maternal aunt and uncle, stipulated that the
defendants would have visitation rights with the child
following the sudden death of the child's mother. Sub-
sequently, plaintiff moved to amend the visitation
order and to terminate the defendants' rights to visita-
tion on the basis that defendants had no legal right to
visitation. The trial court found that the defendants
had standing to pursue visitation on the basis of their
relationship to the child's mother, who before her
death had had sole custody of the child. The trial
court further concluded that termination of visitation
would not be in the best interests of the child.

On appeal, this Court reversed, stating, in relevant
part:

> Defendants make much of the fact that the parties origi-
> nally stipulated defendants' visitation rights with the minor
> child. Specifically, defendants contend that once the parties
> agreed to allow defendants visitation, the trial court had the
> authority to approve the stipulation and incorporate it into
> an order. However, as our Supreme Court noted in *Bowie v
> Arder*, 441 Mich 23, 42-43; 490 NW2d 568 (1992), citing 59
> Am Jur 2d, Parties, § 30, p 414,
>
> "[o]ne cannot rightfully invoke the jurisdiction of the court
> to enforce private rights, or maintain a civil action for the
> enforcement of such rights, unless one has in an individual
> or representative capacity some real interest in the cause of
> action, or a legal or equitable right, title, or interest in the
> subject matter of the controversy. This interest is generally
> spoken of as 'standing.' "
>
> Upon plaintiffs' decision to terminate defendants' visitation
> rights, defendants were without standing to pursue visita-
> tion, irrespective of the prior agreement of the parties. In
> our opinion, once a decision was made to terminate visita-
> tion, the stipulation was of no moment and did not confer
> on defendants a "legal or equitable right, title, or interest in

the subject matter of the controversy," which was not otherwise present. *Id.* [*Id.*]

In my judgment, the legal reasoning of *Terry* applies to the instant case. Clearly, at the time plaintiff's complaint was filed, he lacked standing to initiate the action. Once defendant decided to terminate her stipulation that plaintiff was the father of the child and sought instead to dismiss the action on the basis of plaintiff's lack of standing, as a matter of law, the revoked stipulation could not confer upon plaintiff any "legal or equitable right, title, or interest in the subject matter of the controversy." *Id.* Thus, I would conclude that the trial court correctly dismissed this action for lack of standing.

Even if the majority is correct in finding that the defense of standing was waived by the defendant, I would find that the trial court properly dismissed plaintiff's complaint for failure to state a claim, pursuant to its application of § 6c of the Child Custody Act and § 4 of the Acknowledgment of Parentage Act.

I disagree with the majority's conclusion that defendant's answer and the trial court's temporary order were sufficient to establish that plaintiff is the child's "father" and therefore not a third person under the Child Custody Act. Because defendant was married at the time the child was born, her husband is legally *presumed* to be the father of the child. *Serafin v Serafin*, 401 Mich 629, 636; 258 NW2d 461 (1977). In addition, MCL 700.2114(1)(a) of the Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, states that where a child is born or conceived during a marriage, both spouses are presumed to be the natural parents for purposes of intestate succession. MCL 722.2 of the minors act, MCL 722.1 *et seq.*, also states

that the "parents" of a minor child are equally entitled
to custody of the child unless otherwise ordered by a
court. "Parents" is defined to mean "natural parents,
*if married* prior or subsequent to the minor's birth
. . . or *the mother*, if the minor is illegitimate." MCL
722.1(b) (emphasis added). While the above-cited
statutes are not part of the Child Custody Act, these
statutes share with the Child Custody Act the purpose
of promoting the best interests of children, and there-
fore may be interpreted consistently with each other,
or in pari materia. *Deschaine v St Germain*, 256 Mich
App 665; 671 NW2d 79 (2003). Because plaintiff is not
a parent within the meaning of MCL 722.2 or MCL
700.2114(1)(a), and because he has not established
paternity under MCL 722.1004, I would conclude that
defendant's answer and the trial court's temporary
order (entered by stipulation of the parties with no
hearing or findings having been made by the trial
court) are insufficient to establish that plaintiff is a
"parent" within the meaning of the Child Custody
Act,[2] and that plaintiff's assertion in his complaint

---

[2] The majority's finding to the contrary establishes a precedent that was
not contemplated by the Legislature in my judgment. As noted by our
Supreme Court:

> There is much that benefits society and, in particular, the chil-
> dren of our state, by a legal regime that presumes the legitimacy of
> children born during a marriage. . . . It is likely that these values,
> rather than failure to consider the plight of putative fathers who
> wish to invade marriages to assert paternity claims, motivated the
> drafters of the rules and statutes . . . . [*In re CAW*, 469 Mich 192,
> 199-200; 665 NW2d 475 (2003) (citations omitted).]

The majority opinion runs afoul of these values by negating the presumed
legitimacy of the child. Defendant's husband has never been a party to any
proceeding challenging his paternity, and there has been no judicial find-
ing (based on admissible evidence) that defendant's husband is *not* the
legal father of the minor child. Thus, by virtue of the majority's opinion,
either the child will now have two legal fathers, or the defendant's hus-

that he is the minor child's "father" is insufficient, on these facts, to state a claim under the act. I would also find that plaintiff must establish his entitlement to custody as a third party under § 6c of the Child Custody Act.

MCL 722.26c states, in pertinent part:

> (1) A third person may bring an action for custody of a child if the court finds either of the following:
>
> (a) Both of the following:
>
> (i) The child was placed for adoption with the third person under the adoption laws of this or another state, and the placement order is still in effect at the time the action is filed.
>
> (ii) After the placement, the child has resided with the third person for a minimum of 6 months.
>
> (b) All of the following:
>
> (i) The child's biological parents have never been married to one another.
>
> (ii) The child's parent who has custody of the child dies or is missing and the other parent has not been granted legal custody under court order.
>
> (iii) The third person is related to the child within the fifth degree by marriage, blood, or adoption.

Plaintiff cannot establish a claim under § 6c. Subsection 6c(1)(a) indisputably does not apply here, because the child was not placed for adoption. Fur-

---

band, who by his marital status enjoyed a legal presumption that he was the child's father before these proceedings, will have been stripped of this presumption without any notice or opportunity to be heard. While there does not appear to be collusion between plaintiff and defendant in this case (I note, however, that although paternity was not challenged by defendant, plaintiff did not attach evidence of the paternity test results to his complaint), the majority's ruling provides no bar to such collusion between a claimed putative father and a woman married to someone else, who, for whatever reason, wish to rebut, without notice, the legal presumption of fatherhood bestowed on the husband.

thermore, even though plaintiff has clearly established that he is related to the child by blood and that he and defendant, as the child's biological parents, have never been married, his complaint fails to and cannot plead that the child's mother, defendant, is deceased or missing.

Section 4 of the Acknowledgment of Parentage Act, states:

> An acknowledgement signed under this act establishes paternity, and the acknowledgement may be the basis for court ordered child support, custody, or parenting time without further adjudication under the paternity act . . . . The child who is the subject of the acknowledgement shall bear the same relationship to the mother and the man signing as the father as a child born or conceived during a marriage and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth. [MCL 722.1004.]

As noted above, plaintiff admits that there is no acknowledgment of paternity complying with § 4. Thus, plaintiff is unable to state a claim under this statute as well. I would conclude, therefore, that the trial court properly granted summary disposition to defendant and dismissed plaintiff's complaint under MCR 2.116(C)(8), because plaintiff failed to plead facts establishing a claim for custody under which relief could be granted.[3]

---

[3] I note that unlike a motion to dismiss for lack of standing under MCR 2.116(C)(5), a motion for summary disposition for failure to state a claim under MCR 2.116(C)(8) may be raised at any time, MCR 2.116(D)(3); *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 254 Mich App 241, 248; 657 NW2d 143 (2002), in light of the guiding principle that a party should not be required to defend against a claim that is not recognized in the state. *Id.*

Next, plaintiff argues that the undisputed facts establish that the child was born out of wedlock and that, accordingly, the trial court erred by denying plaintiff's motion for leave to amend his complaint to state a paternity action. I disagree.

A putative father lacks standing to bring an action under the paternity act when the child is born during the mother's marriage to another man, unless the putative father has obtained a *prior* determination that the mother's husband is not the father. *Girard v Wagenmaker*, 437 Mich 231, 235; 470 NW2d 372 (1991). Plaintiff conceded below and on appeal that there was no prior court order finding that defendant's husband was not the father of the child, and that there was no order of filiation or acknowledgment of paternity establishing plaintiff as the father before the filing of the complaint. Thus, on the facts presented here and to the trial court at the time plaintiff sought leave to amend his complaint, plaintiff is unable to establish that he could overcome the legislative "preference to avoid a challenge to a presumed legitimate birth until a prior determination rebuts legitimacy . . . ." *Id.* at 250. The trial court properly denied plaintiff's motion to amend his complaint as futile. MCR 2.116(I)(5); *Lane v Kindercare Learning Centers, Inc*, 231 Mich App 689, 696-697; 588 NW2d 715 (1998).

I would affirm.