## AICHELE v HODGE

Docket No. 247021. Submitted September 3, 2003, at Grand Rapids. Decided October 21, 2003, at 9:10 A.M. Leave to appeal denied, 469 Mich 988.

George A. Aichele sought an order of custody, support, and parenting time in the Branch Circuit Court as the biological father of a child born to Sandra C. Hodge during her marriage to her husband, Carey L. Hodge. After the child's birth in 1998, the plaintiff and defendant Sandra Hodge executed an affidavit of parentage under the Acknowledgement of Parentage Act, MCL 722.1001 *et seq.* The plaintiff and the defendant also completed an application to change the child's birth certificate to name the plaintiff as the child's father. However, the child resided with, and has been raised by, the defendant and her husband. In 2002, the defendant informed the plaintiff that he could no longer see the child, and the plaintiff filed the instant action. The defendant filed an answer that denied that the plaintiff is the father of the child. The defendant moved for summary disposition on the basis that the plaintiff lacked standing to bring the action because the child is presumed to be the issue of the marriage between the defendant and her husband. The husband intervened in the action, and brought a motion for summary disposition, arguing that the plaintiff lacked standing. The husband also argued that the affidavit of parentage was invalid because he and the defendant were married at the time it was executed. The plaintiff moved for summary disposition, alleging certain facts, including that he visited the child at the defendant's home and made payments of support to the defendant. The plaintiff also submitted the results of a paternity test showing that he is the child's father. The circuit court, Michael H. Cherry, J., granted summary disposition in favor of the defendant and her husband on the basis that the plaintiff lacked standing. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff did not have standing to seek custody of the child under the Acknowledgement of Parentage Act, because the act requires that a "child" be "born out of wedlock" in order to properly execute an affidavit of parentage under the act. MCL 722.1003. The act defines "child" as "a child conceived and born to a woman

who was not married at the time of conception or the date of the birth . . . or a child that the circuit court determines was born or conceived during a marriage but is not issue of that marriage." MCL 722.1002(b). Here, the defendant and her husband were married at the time of the child's conception and birth, and no circuit court determination existed that the child was not issue of that marriage. Thus, the child was not "born out of wedlock" and the affidavit executed by the plaintiff and the defendant is invalid.

2. The plaintiff did not have standing as a "parent" to seek custody of the child under the Child Custody Act, MCL 722.21 et seq. Although the act does not define "parent," the act must be read and interpreted consistently with related acts, the Acknowledgement of Parentage Act and the Paternity Act, and, thus, when a child is born in wedlock and there has been no prior judicial determination that the child is not issue of the marriage, the "parents" are the mother and her husband. This interpretation is in keeping with the still valid and existing presumption of legitimacy given children born during a marriage, and with prior Supreme Court precedent. Here, because the defendant and her husband were married when the child was conceived and born, and there has been no judicial determination that the child is not issue of the marriage, the defendant and her husband are her parents. Under these circumstances, the plaintiff cannot seek a determination of parentage under the Paternity Act, nor can he execute a valid affidavit of parentage under the Acknowledgment of Parentage Act. Because the plaintiff cannot obtain a legal determination that he is the child's parent, he does not have standing to seek custody under the Child Custody Act. To the extent that the plaintiff relies on Kaiser v Schreiber, 258 Mich App 357 (2003), that decision actually supports the decision in this case.

3. The plaintiff's due process argument that he has a protected liberty interest in his established relationship with the child is without merit, because there is no record evidence of the plaintiff's relationship with the child. Moreover, the Court of Appeals has previously rejected the case law plaintiff relies on to assert this claim.

Affirmed.

COOPER, P.J., dissenting, stated that she disagrees with the majority's emphasis on the traditional presumption of legitimacy, noting that it is just a presumption that can be rebutted, as it could have been in this case. She further disagrees with the majority's conclusion that the Acknowledgement of Parentage Act, MCL 722.1001 et seq., requires a prior determination by a circuit court that a child is not issue of a marriage given the Legislature's use of the present tense of the word "determine" in its definition of "child" under the

act. MCL 722.1002(b). Because the defendant essentially admitted that the plaintiff is the father of the child, and the evidence supported this, the plaintiff had standing as a "parent" under the Child Custody Act, MCL 722.21 *et seq.*, to bring an action. The order of the circuit court should be reversed.

*Mallory, Cunningham, Lapka & Scott, P.C.* (by *Keldon K. Scott*), for the plaintiff.

*J. Richard Colbeck* for the defendant and third-party intervenor.

Before: COOPER, P.J., and FITZGERALD and KELLY, JJ.

KELLY, J. In this custody action, plaintiff George A. Aichele appeals as of right an order denying his petition for custody, support, and parenting time for lack of standing. We affirm.

### I. FACTS

At all times relevant to this appeal, defendant Sandra C. Hodge and third-party intervenor Carey L. Hodge (Hodge) were (and remain) married to one another. However, in 1997, defendant and her husband encountered marital difficulties during which time plaintiff and defendant became intimate and defendant became pregnant. In January 1998, defendant gave birth to a daughter, but the birth certificate did not name a father. Defendant and Hodge were able to resolve their marital difficulties. The child lived with, and was raised by defendant and Hodge, together with the couple's other children.

On March 25, 1998, a paternity test indicated a 99.99 percent chance that plaintiff was the child's biological father. Later that year, plaintiff and defendant signed an affidavit of parentage, pursuant to the Acknowledgment of Parentage Act, MCL 722.1001

*et seq.*, indicating that plaintiff was the child's biological father. At approximately the same time, plaintiff and defendant also completed an application to name plaintiff as the father on the child's birth certificate.

In mid-2002, defendant informed plaintiff that she would not permit further contact between plaintiff and his daughter. As a result, plaintiff filed a petition for custody, parenting time, and support, alleging that he and defendant were the child's "parents," but acknowledging that defendant was married to Hodge at all times from conception to birth. Plaintiff did not serve or notify Hodge of the action or refer to Hodge's status as the child's legal father. Plaintiff did not refer to the Paternity Act, MCL 722.711 *et seq.*, the Acknowledgment of Parentage Act, or the Child Custody Act, MCL 722.21 *et seq.*, in his petition. Nor did he refer to the affidavit of parentage executed by plaintiff and defendant. As the sole exhibit to the petition, he attached the child's birth certificate. Plaintiff sought joint legal custody, reasonable parenting time, and a determination of appropriate child support, with primary physical care to defendant.

Defendant filed a motion to dismiss for lack of standing, asserting that the child is presumed to be the issue of her marriage to Hodge because the child was born during the marriage. At the same time, defendant filed a response to plaintiff's petition denying that plaintiff was the child's father. Defendant alleged that Hodge "has been involved daily in the raising of this child, is the person whom the child has relied upon for financial support, and is the only person who maintains health insurance upon the child." She also alleged, with regard to the birth certificate,

that it was prepared in error or without her contribution.

Thereafter, Hodge filed a successful motion to intervene. In answer to plaintiff's petition, he alleged that he is the child's presumptive father. He further alleged that he was unaware of the affidavit of parentage and that the affidavit is void because MCL 722.1003 requires that the child's mother be unmarried in order to properly execute an affidavit.

In December 2002, plaintiff filed a motion for summary disposition under MCR 2.116(C)(9) and (10). In this motion, he alleged many facts that were unsupported by any evidence other than his own affidavit. Among these, was the fact that during his relationship with defendant, defendant represented to him that she was separated from her husband and undergoing a divorce. He also alleged that, after the child's birth, he visited her at defendant and Hodge's home. Defendant allegedly explained Hodge's presence there as a visit with Hodge's and defendant's other children. Plaintiff also alleged, without evidentiary support, that he saw the child and paid support until September 2002, but noticed in mid-2002 that Hodge had moved back in with defendant. In support of his motion, plaintiff filed the results of the paternity test and the affidavit of parentage signed by plaintiff and defendant indicating that plaintiff was the father. Notably, the affidavit of parentage provides:

> Further, the mother states that she was not married when this child was born or conceived; or that this child, though born or conceived during a marriage, is not an issue of that marriage as determined by a court of law.

Hodge filed a response to plaintiff's motion and his own motion for summary disposition pursuant to MCR 2.116(C)(9) and (10), arguing that plaintiff lacked standing to bring his petition. Hodge also alleged that (1) no divorce action was ever filed, (2) he resided with defendant continually except for six months after the child's birth, and (3) to his knowledge plaintiff "may have paid approximately two $50.00 payments" for the child's support. In support of this motion, Hodge filed an affidavit attesting, in part, that he always viewed the child as his daughter and supported her financially and emotionally as his child.

In answer to plaintiff's motion, defendant asserted that the motion should be dismissed for lack of subject matter jurisdiction. In her statement of facts, and in her affidavit, defendant alleged that she never indicated that she was divorced or in the process of being divorced. She admitted that she signed the affidavit of parentage, but that she did so "after much urging, cajoling, and prodding by the plaintiff." She also asserted that she received a total of $100 in child support from plaintiff.

At a hearing on these motions, the trial court ruled:

> [N]ot withstanding [sic] the steps taken by the defendant . . . to sign an affidavit of parentage and amended birth certificate, the same . . . could not in any way negate the parentage of Kerry [sic] Hodge.
>
> Further, that both of the statutes relied upon by the plaintiff refer to, and are applicable to, a child born out of wedlock or to a child whose paternity by a circuit court has otherwise been determined, which has not occurred in this particular case.

Accordingly, the circuit court entered an order deny-
ing plaintiff's petition.[1]

## II. STANDARD OF REVIEW

We review de novo the trial court's ruling on a
motion for summary disposition. *Jones v Slick*, 242
Mich App 715, 718; 619 NW2d 733 (2000). "In review-
ing a motion for summary disposition pursuant to
MCR 2.116(C)(5),[2] this Court must consider the
pleadings, depositions, admissions, affidavits, and
other documentary evidence submitted by the par-
ties." *Id.* Statutory interpretation involves a question
of law that this Court also reviews de novo. *Id.* at
719.

## III. STANDING UNDER THE CHILD CUSTODY ACT

### A. ACKNOWLEDGMENT OF PARENTAGE

Although plaintiff's petition for custody did not
refer to the Acknowledgment of Parentage Act, plain-
tiff argued in his motion for summary disposition and
argues on appeal that the admittedly false and
improperly executed affidavit of parentage provides
him with standing to seek custody and parenting time
with the child under the Child Custody Act. We
disagree.

---

[1] Plaintiff filed a motion to stay proceedings, requesting parenting time
with the child while he appealed to this Court. The trial court denied
plaintiff's motion and granted defendant's motion to suspend parenting
time. This Court granted plaintiff's motion for a stay pending this appeal.

[2] Although defendant did not specifically refer to MCR 2.116(C)(5) in
her motion to dismiss for lack of standing, we find that this motion, filed
as her first responsive pleading was, in substance if not form, brought
pursuant to that rule.

To begin with, we emphasize that "the Child Custody Act is the 'exclusive means' of pursuing child custody rights, whereas the Acknowledgment of Parentage Act merely establishes paternity, establishes the rights of the child, and supplies a 'basis for court ordered child support, custody, or parenting time without further adjudication under the [P]aternity [A]ct . . . .'" *Eldred v Ziny*, 246 Mich App 142, 148; 631 NW2d 748 (2001) (citations omitted).

The Acknowledgement of Parentage Act permits a man and a woman, in place of adjudication under the Paternity Act, to legally acknowledge that the man is the father of a child. However, MCL 722.1003 limits the circumstances under which such an acknowledgment is effective:

> (1) *If a child is born out of wedlock*, a man is considered to be the natural father of that child if the man joins with the mother of the child and acknowledges that child as his child by completing a form that is an acknowledgment of parentage. [Emphasis added.]

If a child comes within these limitations, only then, and on the basis of a properly executed affidavit of parentage, can the man can reap the benefits and acquire the burdens of parenthood:

> An acknowledgement signed under this act establishes paternity, and the acknowledgment may be the basis for court ordered child support, custody, or parenting time without further adjudication under the paternity act . . . . The child who is the subject of the acknowledgment shall bear the same relationship to the mother and the man signing as the father as a child born or conceived during a marriage and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth. [MCL 722.1004.]

Reading these two statutory provisions together, as we must, we conclude that for an affidavit of parentage to be properly executed, the child must be "born out of wedlock."

## B. BORN OUT OF WEDLOCK

In determining whether a child is "born out of wedlock" as that phrase is used in the Acknowledgment of Parentage Act, we are bound by the definition provided in the act. "[W]hen a statute specifically defines a given term, that definition alone controls." *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). MCL 722.1002 clearly provides:

> As used in this act . . . (b) "Child" means a child conceived and born to a woman who was not married at the time of conception or the date of birth of the child, or a child that the circuit court determines was born or conceived during a marriage but is not the issue of that marriage.

A virtually identical definition is found in the Paternity Act:

> "Child born out of wedlock" means a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage. [MCL 722.711(a).]

It is no wonder that the definition is the same in the Acknowledgment of Parentage Act and the Paternity Act because the acts simply provide different means to the same end. Under the Paternity Act, a party can seek a judicial determination of paternity; under the Acknowledgement of Parentage Act, a man

and a woman can essentially stipulate the man's paternity. Under either act, paternity can be properly established *only* if the child is "born out of wedlock," i.e., (1) the child is born of a woman who was not married at the time of conception or birth, or (2) a court previously determined that the child is not issue of the marriage. Neither of these two circumstances existed at the time plaintiff and defendant signed the affidavit of parentage. Therefore, the affidavit of parentage is invalid and without lawful effect.

Plaintiff argues that *Hoshowski v Genaw*, 230 Mich App 498; 584 NW2d 368 (1998)[3] permits him to move for custody on the basis of the affidavit of parentage. But plaintiff overlooks two vital words in the Court's holding: "We hold that the parties' *properly executed* affidavit of parentage establishes plaintiff as a parent under the Revised Probate Code and that plaintiff was not required to file an action under the Paternity Act before seeking custody and parenting time under the Child Custody Act . . . ." *Id.* at 499-500 (emphasis added). Although plaintiff suggests that a "properly executed" affidavit of parentage does not require that the child be born out of wedlock, we find plaintiff's reading of the statute is simply incorrect in light of the definition of "child" provided in the act.

Additionally, the affidavit of parentage contains a false swearing. The affidavit of parentage supplied by the state of Michigan and signed by the parties provides:

---

[3] *Hoshowski* addressed MCL 700.111(9) of the Revised Probate Code, which was deleted by 1996 PA 306, and which was enacted in conjunction with 1996 PA 305, the Acknowledgment of Parentage Act. *Hoshowski*, *supra* at 500 n 2. MCL 700.111(9) was later repealed by 1998 PA 386 and replaced by MCL 700.2114 of the Estates and Protected Individuals Code, MCL 700.1101 *et seq.*

> Further, the mother states that she was not married when this child was born or conceived; or that this child though born or conceived during a marriage, is not an issue of that marriage as determined by a court of law.

At the time of the child's conception and birth, defendant and Hodge were married and there had been no court determination that the child was not an issue of their marriage. Therefore, the affidavit of parentage was falsely sworn. In the lower court, plaintiff argued that the above-quoted language does not represent the law, but was "superfluous, and was added by the state registrar at the time that it designed the form." We find that this language is not superfluous, but, rather, accurately reflects the definition of "child" set forth in the Acknowledgment of Parentage Act.

In short, an affidavit of parentage can never be properly executed unless a child is born out of wedlock. Here, the child was not born out of wedlock because she was conceived and born during defendant's marriage to Hodge and there had been no judicial determination that she was not an issue of the marriage. Therefore, the affidavit of parentage signed by plaintiff and defendant is invalid. Because the affidavit of parentage is invalid, it does not provide plaintiff with standing to seek custody of the child.

### C. IS PLAINTIFF A PARENT?

Having determined that the improperly executed affidavit of parentage does not provide plaintiff with standing to seek custody of the child, we next address whether plaintiff otherwise had standing to move for custody under the Child Custody Act. Plaintiff argues that he has standing as a "parent" to move

for custody. Unfortunately, the Child Custody Act does not define "parent," though it does define "third person"[4] as "an individual other than a parent." MCL 722.22(g). Because the act does not define parent, we undertake the task of statutory construction.

> The Court is bound by a number of rules of statutory construction when it interprets statutes. Although the proper construction of any statute is for the courts, this Court must still give the statute a valid and reasonable construction that will reconcile any inconsistencies and give effect to all its parts. While the words of a statute must be given their ordinary construction according to their common and approved usage, the Court can also refer to the legislative intent in passing the statute to find an appropriate interpretation. This legislative intent can be ascertained from examining the language of the act, the subject matter under consideration, the scope and purpose of the act, and other preceding statutes. [*Girard v Wagenmaker*, 437 Mich 231, 238-239; 470 NW2d 372 (1991) (citations omitted).]

We begin by highlighting the historical significance in common law of the presumption of legitimacy of a child conceived or born during a marriage. "Traditionally, that presumption could be rebutted only by proof that a husband was incapable of procreation or had no access to his wife during the relevant period." *Michael H v Gerald D*, 491 US 110, 124; 109 S Ct 2333; 105 L Ed 2d 91 (1989), citing H. Nicholas, Adulturine Bastardy 1 (1836), citing Bracton, De Legibus et Consuetudinibus Angilae, bk i, ch 9, p 6; bk ii, ch 29, p 63, ch 32, p 70 (1569). Under what became known as

---

[4] We do not address in full whether plaintiff has standing as a third person under MCL 722.26c because plaintiff does not argue on appeal that he does. But we find that plaintiff does not have standing as a third person because the facts of the case do not fall into either of the two categories in MCL 722.26c.

"Lord Mansfield's Rule," a husband was presumed to
be the father of his wife's child and a declaration of
the father or mother could not be " 'admitted to bas-
tardize the issue born after marriage.' " *Serafin v Ser-
afin*, 401 Mich 629, 632-633; 258 NW2d 461 (1977),
quoting *Goodright v Moss*, 2 Cowp 591-594; 98 Eng
Rep 1257-1258 (1777). But our Supreme Court, upon
losing its conviction that the rule " 'works for the
peace and quiet of the family,' " *id.* at 634 (citation
omitted), modified Lord Mansfield's Rule to permit a
man to contest paternity while maintaining the "still
viable and strong, though rebuttable, presumption of
legitimacy," *id.* at 636. It is clear that the presumption
of legitimacy was considered necessary to limit the
bastardization of children and the concomitant bur-
den on society. Although modern developments per-
mit the determination of paternity by more definite
means than testimony, the presumption of legitimacy
continues to serve the purpose of promoting order
and stability.

Accordingly, the presumption of legitimacy still per-
meates Michigan law. For example, the vital records
act, MCL 333.2801 *et seq.*, incorporates this presump-
tion. MCL 333.2824(1) provides: "The name of the
husband at the time of conception or, if none, the
husband at birth shall be registered as the father of
the child." Also, as discussed above, the presumption
of legitimacy that accompanies an intact marriage is
incorporated in the Paternity Act and the Acknowl-
edgment of Parentage Act. Recognizing the Legisla-
ture's goal of preserving the sanctity of the marital
family even in situations like the one presented here,
our Supreme Court noted that through the Paternity
Act,

[t]he Legislature has for 182 years now chosen to protect this "sanctity," and that choice prompts its preference to avoid a challenge to a presumed legitimate birth until a prior determination rebuts legitimacy and threatens the child's support by exposing the fact that the presumed father is not the biological father. [*Girard, supra* at 250.]

The presumption of legitimacy is also recognized with regard to Juvenile Division proceedings. MCR 5.903(A) provides:

(A) When used in this subchapter, unless the context otherwise indicates:

(1) "Child born out of wedlock" means a child conceived and born to a woman who is unmarried from the conception to the birth of the child, or a child determined by judicial notice or otherwise to have been conceived or born during a marriage but who is not the issue of that marriage.

\*          \*          \*

(4) "Father" means:

(a) a man married to the mother at any time from a minor's conception to the minor's birth unless the minor is determined to be a child born out of wedlock[.]

In *In re CAW*, 469 Mich 192; 665 NW2d 475 (2003), our Supreme Court determined, "The essence of this rule is that a child has a father if the child's mother is married at any time during gestation unless the court determines 'by judicial notice or otherwise' that the child was not 'the issue of the marriage.' " *Id.* at 199. The Court found that because the child had a married mother and father during gestation and no finding was made that the child was not issue of the marriage, the putative father lacked standing. The Court aptly noted:

[T]here is much angst about the perceived unfairness of not allowing [the putative father] the opportunity to establish paternity. . . . There is much that benefits society and, in particular, the children of our state, by a legal regime that presumes the legitimacy of children born during a marriage. It is likely that these values, rather than failure to consider the plight of putative fathers who wish to invade marriages to assert paternity claims, motivated the drafters of the rules and statues under consideration. [*Id.* at 199-200 (citation omitted).[5]]

The presumption of legitimacy is also recognized with regard to inheritances in the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* MCL 700.2114 provides:

(1) Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. The parent and child relationship may be established in any of the following manners:

(a) If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for purposes of intestate succession. . . .

(b) Only the individual presumed to be the natural parent of a child under subdivision (a) may disprove a presumption that is relevant to their relationship, and this exclusive right to do so terminates upon the death of the presumed parent.

MCL 700.2114(1)(c) limits the circumstances under which a man may be considered the natural father for purposes of intestate succession "[i]f a child is born

---

[5] We note that it is not only putative fathers of legitimate children that are denied standing to contest paternity. Legitimate children also lack standing to bring an action under the Paternity Act. *Puffpaff v Hull*, 169 Mich App 688; 426 NW2d 778 (1988).

out of wedlock or if a child is born or conceived during a marriage but is not the issue of that marriage . . . ." This Court construed MCL 700.111,[6] the virtually identical predecessor to MCL 700.2114, finding that its clear language

> reveal[ed] a logical progression of legal assumptions about parents and their children, beginning with the initial assumption that children are the heirs of their natural parents, who are presumed to be the married mother and father at the time the children are conceived or born, and leading to children inheriting from another man after the "presumed" parent disproves his paternity. [*In re Quintero Estate*, 224 Mich App 682, 694; 569 NW2d 889 (1997).]

While each of the above cited acts or rules serves a distinct purpose, one would be hard pressed to successfully argue that these laws were not intended to flow seamlessly through birth, life, and death to maintain as much order, peace, and consistency as possible. Clearly, it would not make sense to recognize a presumption of legitimacy with respect to birth, but not recognize the same presumption with respect to inheritances. Likewise, it does not make sense to recognize the presumption with respect to paternity determinations, but not with respect to custody actions. Therefore, we find that the Paternity Act, the Acknowledgment of Parentage Act, and the Child Custody Act, which serve interrelated purposes, must be interpreted consistently with each other and read in pari materia. Accordingly, under the Child Custody Act, when a child is born in wedlock and there has been no judicial determination that the child is not

---

[6] As noted above, MCL 700.111 was also the predecessor to both the Acknowledgment of Parentage Act and MCL 700.2114. See n 3, *supra*.

issue of the marriage, the "parents" are the mother and her husband. This is in keeping with *Girard, supra,* in which our Supreme Court held that if a child is conceived or born during a marriage and there has been no judicial determination that the child was not issue of the marriage, a putative father has no standing to contest paternity under the Paternity Act or seek custody under the Child Custody Act.

Here, because defendant and Hodge were married when the child was conceived and born, defendant and Hodge are her parents. There has been no judicial determination otherwise. Under these circumstances, plaintiff cannot seek such a determination under the Paternity Act. *Girard, supra* at 237-251. Further, he cannot execute a valid affidavit of parentage under the Acknowledgment of Parentage Act. In essence, when a child is born during a marriage, a putative father can never successfully institute legal proceedings to be declared a parent. Because plaintiff cannot obtain a legal determination that he is the child's "parent," he does not have standing to seek custody of her under the Child Custody Act. *Girard, supra* at 251.

### D. *KAISER v SCHREIBER*

Plaintiff relies on the recent decision of *Kaiser v Schreiber,* 258 Mich App 357; 670 NW2d 697 (2003), in which another panel of this Court determined that a putative father had standing to seek custody of a child born in wedlock because the mother admitted, in her first responsive pleading, that he was the bio-

logical father.*  Unlike *Kaiser*, defendant in this case
moved to dismiss plaintiff's petition on the basis that
plaintiff lacked standing, and answered the petition
denying that plaintiff was the father. In light of these
facts, *Kaiser* supports our decision to the extent it
noted:

> In any event, what we can conclude is that if defendant
> had, in lieu of filing an answer in the case at bar, moved to
> dismiss plaintiff's complaint for a lack of standing in light of
> *Girard*, *the trial court would have been obligated to grant
> that motion and dismiss the complaint*. [*Id.* at 361 (empha-
> sis added).]

*Altman v Nelson*, 197 Mich App 467; 495 NW2d 826
(1992), the case relied on in *Kaiser*, also supports our
decision in that it held:

> "In order to have standing to seek relief under the Pater-
> nity Act, plaintiff must allege that the child was born out of
> wedlock. 'Child born out of wedlock' is defined as 'a child
> begotten and born to a woman who was not married from
> the conception to the date of birth of the child, or a child
> which the court has determined to be a child born or con-
> ceived during a marriage but not the issue of that mar-
> riage.' " [*Kaiser*, *supra* at 364-365, quoting *Altman*, *supra* at
> 475-476 (citations omitted).]

In this case, plaintiff specifically alleged: "The Defen-
dant was married at all times between conception
and birth of the minor child, including to the present,
to Carey Hodge." Therefore, even under *Kaiser* and

---

\* Following the release of the decision in this case, the Supreme Court
reversed the judgment of the Court of Appeals in *Kaiser* and reinstated
the judgment of the circuit court in *Kaiser*. 469 Mich 938 (2003).—
Reporter.

*Altman*, the plaintiff's petition was properly dismissed for lack of standing.

But to the extent *Kaiser* allows a defendant to essentially confer standing on a plaintiff by admitting his paternity, we note our strong disapproval of the majority opinion and agree with Judge WILDER's dissent. First, the holding completely disregards the presumption of legitimacy and its underlying purpose and circumvents established legal process. It permits the mother of a child born in wedlock and the putative father to collude and essentially rob the presumed father of his parental rights and his child. This is particularly egregious as a married father would be stripped of his parental rights without notice or hearing. A parent's custodial rights are an important interest that warrants due process protection. *Hilliard v Schmidt*, 231 Mich App 316, 319; 586 NW2d 263 (1998). There is an important liberty interest in the development of the parent-child relationship. *Troxel v Granville*, 530 US 57, 65-66; 120 S Ct 2054; 147 L Ed 49 (2000). Our courts' sanction of this act threatens the substantive and procedural due process of fathers of children born in intact marriages.

Second, the holding is incorrect as a matter of law because a defendant cannot confer standing on a plaintiff. In *Bowie v Arder*, 441 Mich 23, 42-43; 490 NW2d 568 (1992), quoting 59 Am Jur 2d, Parties, § 30, p 414, our Supreme Court explained standing stating that,

> "One cannot rightfully invoke the jurisdiction of the court to enforce private rights, or maintain a civil action for the enforcement of such rights, unless one has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the

subject matter of the controversy. This interest is generally spoken of as 'standing' . . . ."

The Child Custody Act only confers standing to seek custody on parents and third persons. Thus, to have standing, a plaintiff must *be* either a parent or a third person. If a plaintiff files a claim alleging that he is a parent or third person, he does not have standing simply because he so alleges. Standing is not an allegation; it is a fact. But if the plaintiff, in fact, is not a parent or third person, it is the defendant's responsibility to raise the issue. A defendant can do this in her first responsive pleading by moving to dismiss on the basis that the plaintiff lacks standing pursuant to MCR 2.116(C)(5). She could also move pursuant to MCR 2.116(C)(10) by submitting evidence that disproves plaintiff's allegations. On the other hand, if a plaintiff fails to allege that he is a parent or third person, the defendant can move under either MCR 2.116(C)(5), alleging lack of standing, or MCR 2.116(C)(8) for failure to state a claim.

In concluding that pleadings rather than facts establish standing, *Kaiser* erroneously relies on *Altman, supra*. In *Altman*, the plaintiff in a paternity action, "asserted that 'at the time of said birth, Defendant was and remains an unmarried woman.' " *Id.* at 469. This Court determined that the plaintiff thereby "claimed standing to bring the action." *Id.* at 477. Although the defendant did not move to dismiss on the basis that plaintiff lacked standing, she denied in her answer that she was unmarried at the time of the child's birth. *Id.* at 469. On the basis of a blood test, the trial court entered an order of filiation. The parties then agreed on custody, visitation, and support issues. Later, the defendant agreed to relinquish cus-

tody entirely. *Id.* at 470. Approximately three years
after the order of filiation was entered, the defendant
moved to dismiss the case for lack of jurisdiction. *Id.*
at 470, 478. The defendant raised the issue of standing
for the first time on appeal. *Id.* at 471. This Court
held:

> Although *the father was not entitled to an order of filia-*
> *tion inasmuch as he could not prove that he had standing,*
> defendant failed to appeal the order of filiation that was
> *erroneously entered.* Plaintiff has now had physical custody
> of the child for over 2½ years pursuant to a consent order
> of custody. In view of the fact that defendant did not appeal
> the erroneously entered order, accepted support payments
> and then voluntarily transferred physical custody to the
> plaintiff, and waited three years before making a motion to
> vacate the judgment, we are not convinced that the circum-
> stances mandate setting aside the judgment in order to
> achieve justice. [*Id.* at 479 (emphasis added).]

Thus, *Altman* draws a distinction between pleading
sufficient facts to establish standing and actually
being able to prove standing. This Court determined
that the order of filiation was erroneously entered
because the plaintiff could not prove standing. But it
reinstated the order of filiation on the basis of equita-
ble concerns, because three years had elapsed from
entry of the order and the defendant's motion.

Third, *Kaiser* wrongly held that the mere lack of
dispute of paternity between a plaintiff and a defen-
dant can overcome the well-established presumption
of legitimacy. *Kaiser* poses two reasons for disregard-
ing this presumption. The first reason is "To require
under the Paternity Act that parentage be established
where parentage is undisputed would constitute a
waste of judicial resources." *Kaiser, supra* at 367. We

disagree. If the law sets forth the rules by which parentage may be established, application of these rules is not a waste of judicial resources. The second reason is "Nowhere in the Child Custody Act is there a requirement that parentage be established first under the Paternity Act even if parentage is undisputed." *Id.* But, as discussed above, the Child Custody Act requires that a person be a parent or a third person in order to seek custody. A man is a parent under the Child Custody Act only if (1) he is presumed to be a parent by law because the child was born in wedlock, (2) there has been a prior court determination that he is the parent of a child born out of wedlock, or (3) he has acknowledged parenthood of a child born out of wedlock. Therefore, we disagree that the agreement of parties or pleadings alone can overcome the presumption of legitimacy that the law confers on a child from an intact marriage.

## IV. DUE PROCESS

We also reject plaintiff's due process argument as being totally without merit. Plaintiff argues that he had a protected liberty interest in his established relationship with the child. In support of this argument, he relies on language found in *Hauser v Reilly*, 212 Mich App 184, 188; 536 NW2d 865 (1995):

> We agree with the reasoning of Justice Brennan in *Michael H* [*supra*]. Following that analysis, if plaintiff in this case had an established relationship with his child, we would hold that he had a protected liberty interest in that relationship that entitled him to due process of law. However, because plaintiff has no such relationship, we hold that the Paternity Act did not deny him his right to due process.

To begin with, because there is no record evidence of plaintiff's relationship with the child, we could dismiss plaintiff's argument on that basis alone. But we also decline to apply the above-cited dicta as this Court previously declined to do in *McHone v Sosnowski*, 239 Mich App 674; 609 NW2d 844 (2000). There has yet to be any determination in this state that a putative father of a child born in wedlock, without a court determination of paternity, has a protected liberty interest with respect to a child he claims as his own. Indeed, we do not foresee recognition of this liberty interest in light of this state's strong adherence to the well-established presumption of legitimacy and its disinclination to interfere with married parents raising their children, absent compelling circumstances not shown here.

Affirmed.

FITZGERALD, J., concurred.

COOPER, P.J. (*dissenting*). I respectfully dissent. Much has been made in the majority opinion of the presumption of legitimacy in order to protect the "sanctity of marriage" and ensure the "peace and quiet of the family." To this end, I question whether this is an issue of "sanctity" under the circumstances of this case.[1] Regardless, the presumption of legitimacy is just that—a presumption—and presumptions of legitimacy can be rebutted.[2] Under the majority analysis, there would be no presumption of legitimacy; it would be irrefutable fact.

---

[1] It is interesting to note that the word "sanctimonious" follows "sanctify" in the *Random House Webster's Unabridged Dictionary* (1998), although it has a totally opposite meaning.

[2] See *Serafin v Serafin*, 401 Mich 629, 636; 258 NW2d 461 (1977).

In this case, the following evidence was placed on the record:

- A blood test indicating a 99.99% probability that plaintiff is Katherine's biological father;

- An acknowledgment of parentage signed by plaintiff and defendant nearly five years before the instant petition;

- An application to name plaintiff as Katherine's father on the birth certificate that was signed by defendant nearly five years before the instant petition;

- The actual birth certificate naming plaintiff as Katherine's father; and

- Defendant's acceptance of child support from plaintiff.

In the face of this overwhelming evidence, it is clear that defendant would have met his burden to rebut the presumption of legitimacy.

Defendant waited nearly five years before deciding to terminate plaintiff's relationship with Katherine. Not only did defendant acknowledge plaintiff's role as Katherine's biological father during those five years, but the record reveals that the child was able to reap the emotional and financial benefits that plaintiff offered. While the majority points out that defendant disputes the amount of money plaintiff provided, the fact remains that defendant admits accepting some money from plaintiff for child support. The amount is irrelevant; the fact that she accepted any money for child support is pertinent as an admission. Defendant's further contention that plaintiff's visits to her house were *only* to see her and her husband's other

children strains the imagination. The majority notes
that defendant denies contributing to the birth certifi-
cate naming plaintiff as Katherine's father. Yet, it is
undisputed that the application for this birth certifi-
cate, changing Katherine's last name from Hodge to
Aichele, bears her signature. Defendant also does not
deny signing an acknowledgement of plaintiff's pater-
nity. Although the majority labels this a "false affida-
vit" because the small print on the form states that
defendant is an unmarried woman, it is the defendant
who perjured herself regarding this particular fact
and not plaintiff. It is clear that defendant never filed
a claim to revoke this acknowledgment and the sub-
stance of her affidavit regarding plaintiff's paternity
cannot be affirmatively denied. In point of fact, the
results from the blood test indicate the probability of
plaintiff's paternity at 99.99 percent and, therefore,
put any further questions in this regard to rest.

"An acknowledgment signed under [the Acknowl-
edgment of Parentage Act, MCL 722.1001 *et seq.*]
establishes paternity, and . . . may be the basis for
court ordered child support, custody, or parenting
time . . . ."[3] The majority's determination that the
acknowledgement in question is invalid stems from a
flawed analysis of the statutory definition of "child" in
the act. According to the majority, a putative father
can never establish paternity under the Acknowledge-
ment of Parentage Act unless the child is born out of
wedlock or a trial court previously determines that
the child is not issue of a marriage. In concluding that
the Acknowledgment of Parentage Act should be con-
strued in the same manner as the Paternity Act, MCL

[3] MCL 722.1004.

722.711 *et seq.*, the majority comments that the definitions of "child" in the two acts are virtually identical. By making this comparison, however, the majority overlooks a significant difference between the two acts.

In *Girard v Wagenmaker*,[4] our Supreme Court interpreted the Paternity Act and concluded that a putative father could only establish paternity under the act if a child was born out of wedlock or if a circuit court had already determined that the child was not issue of the marriage. The foremost rationale for this decision was the fact that the Legislature used the present perfect tense of "determine" when discussing the time frame for the circuit court's determination.[5] As explained in *Girard*:

> In the second clause of the born out of wedlock definition, the Legislature used the term "which the court has determined" to define one of the necessary requirements to find that a child is born out of wedlock. "[H]as determined" is the present perfect tense of the verb "determine." The present perfect tense generally "indicates action that was started in the past and has recently been completed or is continuing up to the present time," or shows "that a current action is logically subsequent to a previous recent action." For a putative father to be able to file a proper complaint in a circuit court, a circuit court must have made a determination that the child was not the issue of the *marriage at the time of filing the complaint.*[6]

Our Supreme Court noted that if it ignored the plain meaning of the phrase "has determined," it would

---

[4] 437 Mich 231; 470 NW2d 372 (1991).

[5] *Id.* at 242-243.

[6] *Id.* (citations omitted; emphasis in original).

essentially be declaring a portion of the Parentage Act a nullity.[7]

Notably, the Acknowledgement of Parentage Act defines a child as an individual "conceived and born to a woman who was not married at the time of conception or the date of birth of the child, or a child that the circuit court *determines* was born or conceived during a marriage but is not the issue of that marriage."[8] In this regard, I note that both *Girard* and the Paternity Act existed well before the Legislature enacted the Acknowledgement of Parentage Act in 1996. So, it can only be assumed that the Legislature was aware of the Supreme Court's analysis in *Girard* that the use of "determine" in the present perfect tense would require a previous court determination that the child was not issue of the marriage. Under the same rationale, the use of "determine" in the present tense indicates a legislative intent to depart from the requirement of a past determination in the Acknowledgement of Parentage Act.[9] Basic principles of statutory construction dictate that the Legislature is presumed to act with knowledge of the statutory interpretations of this Court and the Supreme Court.[10] Accordingly, I conclude that the Legislature's use of the present tense in the phrase "that the circuit court determines," renders a prior determination of whether the child was an issue of the marriage unnecessary in the Acknowledgement of Parentage Act. This is only

---

[7] *Id.* at 243-244.

[8] MCL 722.1002(b) (emphasis added).

[9] See Sabin, ed, *The Gregg Reference Manual* (New York: McGraw-Hill, 9th ed, 2001), § 10, p 250.

[10] *Gordon Sel-Way, Inc v Spence Bros, Inc,* 438 Mich 488, 505-506; 475 NW2d 704 (1991).

logical, given the fact that a putative father seeking standing under this act is armed with an acknowledgment of his paternity voluntarily signed by the mother.

I also disagree with the majority's stated disapproval of this Court's recent decision in *Kaiser v Schreiber*.[11] A panel of this Court is required to follow a prior published opinion of this Court issued on or after November 1, 1990.[12] Although *Kaiser* focuses on a biological father's action under the Paternity Act, it offers some guidance for the instant case. The biological father in *Kaiser* was determined to have standing to bring an action under the Child Custody Act because the defendant mother admitted in her pleadings that he was the father.[13] The Court noted, "[n]owhere in the Child Custody Act is there a requirement that parentage be established first under the Paternity Act even if parentage is undisputed."[14] Consequently, the Court held that there was no need to proceed under the Paternity Act where the putative father's status as a parent was confirmed by the mother's admission.[15]

Likewise, in the instant case plaintiff has standing as a parent to bring an action under the Child Custody Act because defendant formally admitted that plaintiff was Katherine's father when she signed the acknowledgment of parentage form and changed the birth certificate.[16] Because the Child Custody Act only

---

[11] 258 Mich App 357; 670 NW2d 697 (2003).

[12] MCR 7.215(J)(1).

[13] *Kaiser, supra* at 366.

[14] *Id.* at 367.

[15] *Id.*

[16] See *id.* at 366-367.

specifically limits the standing of guardians and third persons, plaintiff, as an acknowledged parent, would not have to establish standing under MCL 722.26c.[17]

The majority expresses grave concern for the due process rights of the defendants' husbands in cases like *Kaiser* and the instant case. I find this conclusion grossly exaggerated and legally unsound. According to the majority, allowing the mother of a child born in wedlock to confer standing on a putative father, through admission of his paternity, would leave married fathers without any recourse with respect to their parental rights. However, there is no provision in the Acknowledgement of Parentage Act or the Child Custody Act forbidding these husbands from intervening in such actions. In fact, that is exactly what the husband did in this particular case. The more troubling question is what happens to biological fathers in these types of cases when they are denied standing and therefore access to the halls of justice. Quoting Judge Schuette's concurring opinion in *Kaiser*, the "strained interpretation of the 'plain meaning' of [these acts] is a tortured journey that leaves [the putative father] as a bystander on the wayside of Michigan's statutory freeways."[18]

If we are to tout societal values then it should be noted that there has been public outcry for the increased accountability of biological fathers. Unfortunately, the justice system is sending a mixed message when it denies fathers who attempt to accept their responsibility access to the courtroom and their children. Lord Mansfield's Rule is no longer the pre-

---

[17] *Id.*

[18] *Id.* at 378 (Schuette, J, concurring).

vailing authority in today's legal system. The presumption of legitimacy originated to ensure that children would not be denied support or their rights of inheritance.[19] In cases like the instant case, the putative fathers are seeking to provide support and rights of inheritance to their children. And with the advent of modern technology and DNA evidence, courts do not have to rely upon a witness's credibility to determine paternity.

I find it particularly interesting that the majority chose to quote the following passage from *In re CAW*, a case involving a child protective proceeding:

> There is much that benefits society and, in particular, the children of our state, by a legal *regime* that presumes the legitimacy of children born during a marriage. It is likely that these values, rather than failure to consider the plight of putative fathers who wish to invade marriages to assert paternity claims, motivated the drafters of the rules and statutes under consideration.[20]

With the availability of 99 percentile proofs of paternity, there can be no justification for denying due process rights to putative fathers. Additionally, the phrase "regime" connotes a system devised under a certain authority or power. I would remind my colleagues that the judiciary was created as a *balance* of power. And, as such, the judicial system should never be used to impose the value system of the current political "regime" upon litigants under the guise of justice.

I would reverse.

---

[19] See *Girard, supra* at 240-241; *Serafin, supra.*

[20] *Ante* at 160, quoting *In re CAW*, 469 Mich 192, 199-200; 655 NW2d 475 (2003) (emphasis added).