*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOUGLAS LEONARD,

　　　　　Plaintiff-Appellee,

v

MARYANNE CARMELLA LEONARD, also
known as MARYANNE CARMELA BOGDAN,

　　　　　Defendant-Appellant.

UNPUBLISHED
December 22, 2022

No. 359382
Oakland Circuit Court
Family Division
LC No. 2020-502459-DC

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

　　　　Defendant, Maryanne Carmella Leonard,[1] also known as Maryanne Carmela Bogdan, proceeding *in propria persona*, as she did in the trial court, appeals as of right the trial court judgment of custody, which awarded sole legal and physical custody of the parties' minor child, CL, to plaintiff, Douglas Leonard. We affirm.

## I. BACKGROUND

　　　　The parties met in Michigan at their place of employment and started a relationship in 2014 or 2015. The two married in South Dakota on September 6, 2015. The parties lived in Windsor, Ontario, and their son, CL, was born in 2017. After CL was born, plaintiff continued to work in Michigan, but defendant stopped working to care for CL. The family eventually moved to Troy, Michigan, in November 2019, to be closer to plaintiff's work.

　　　　According to plaintiff, he was unaware of any marital issues until February 6, 2020. On that date, defendant was supposed to pick plaintiff up from work. When plaintiff called her, defendant said that she was in the parking lot. When plaintiff went to the parking lot, their vehicle

---

[1] Defendant's middle name is misspelled as "Carmella" in plaintiff's complaint. Her middle name is actually spelled as "Carmela" (with only one "l").

was there, but it was empty and CL's car seat was gone. Plaintiff tried to contact defendant, but she did not answer her phone.

On February 13, 2020, defendant filed a petition in Livingston County for a personal protection order (PPO) against plaintiff. Although one was initially issued ex parte, it was terminated after a subsequent hearing. During that PPO hearing, plaintiff learned that defendant and CL had moved to South Dakota.

On May 4, 2020, defendant filed an action for divorce in South Dakota. In that petition, defendant acknowledged that the parties were married on September 6, 2015, and had one child together, CL. Plaintiff contested jurisdiction in South Dakota and filed his own complaint for divorce in Michigan on May 12, 2020, in LC No. 2020-500333-DM. On June 12, 2020, the South Dakota court held a hearing at which all parties were physically present. At this hearing, the South Dakota court "entered its oral decision and Findings of Fact and Conclusions of Law on the record."[2]

The very next day, June 13, 2020, defendant took CL to Alaska. Defendant believed that she could take CL anywhere, and that not all the provisions of the subsequently entered South Dakota order were mentioned or incorporated in the court's June 12, 2020 oral pronouncements. Defendant's purported "domicile" in Alaska was a home in Wasilla, Alaska, which was owned by Clinton DesJarlais, but defendant lived in a home in Fairbanks, Alaska, which was owned by Leslie Zerbe, a Baptist missionary. DesJarlais, his wife Sarah Buchhorn, their six children, Zerbe, defendant, and CL all lived in the Fairbanks home.[3]

On June 15, 2020, the South Dakota court entered its order declining jurisdiction over the custody issue. The court stated that South Dakota was an inconvenient forum and that Michigan instead "is a more appropriate forum for the custody determination."

On June 16, 2020, defendant filed a petition for annulment in Alaska. In that petition, defendant asserted that she and plaintiff were never legally married. This was the first time that plaintiff became aware of allegations pertaining to the validity of their marriage. Although the petition contained many allegations, defendant's principal theory was that her marriage to plaintiff was void because plaintiff had been married twice before and failed to terminate either of those marriages.[4] Defendant also alleged that "Clinton DesJarlais [and] Sarah Buchhorn are acting as legal guardians to the child as granted from [defendant] to them and they willfully accept."

---

[2] Although a transcript of the June 12, 2020 hearing was not produced, the court's order states that the court declined to exercise jurisdiction over the issue of custody, leaving Michigan to address that issue. According to the record, the South Dakota judge conferred with the Michigan trial judge in LC No. 2020-500333-DM, in accordance with the Uniform Child Custody Jurisdiction and Enforcement Act.

[3] Zerbe was married, but according to defendant, Zerbe's wife was living in Costa Rica.

[4] This petition was admitted into evidence at the trial in this case as Exhibit 4.

Defendant further asserted that both DesJarlais and Buchhorn "have agreed to fully legally adopt" CL. Defendant described DesJarlais as her "brother in Christ."

On June 25, 2020, the trial court in the divorce action in Michigan, LC No. 2020-500333-DM, entered an order stating:

> After taking testimony from the parties,[5] the Court finds that it is the appropriate court to make the initial custody and parenting time determination. Based on the testimony from the parties, the record in this case, and having considered the best interest factors, the Court awards Plaintiff-Father temporary sole legal and physical custody of the child . . . , with Defendant-Mother having supervised parenting time at Impact [Counseling Services]. Defendant-Mother is ordered to return the child to the marital home in the State of Michigan immediately.

Despite the Michigan court order, defendant did not return CL to Michigan. On the same day the Michigan order was entered, Alaska State Troopers, under the auspices of a welfare check, met up with defendant as she was in a vehicle heading to Fairbanks with DesJarlais and CL The troopers took CL into custody, where he was subsequently placed in foster care. Following hearings in Alaska on June 28 and June 30, 2020, the Alaska court entered an order permitting plaintiff to remove CL from the state of Alaska.

When plaintiff first saw CL in Alaska, plaintiff barely recognized CL because of the poor condition he was in. CL was unkempt, there was something wrong with his left eye, his teeth were black, and he had open sores that were bleeding. The Alaskan Child Protective Services supervisor and foster mother gave plaintiff medication for CL. Plaintiff thereafter took CL back to the home in Michigan.

Back in Alaska, defendant was impregnated the day after CL was released to plaintiff. She claimed that she used a sperm donor "through a friend from somebody," but did not have the person's name. Defendant gave birth prematurely to another child in March 2021.[6]

On September 8, 2020, the Michigan trial court in LC No. 2020-500333-DM granted plaintiff's motion to voluntarily dismiss the case, in light of defendant's argument that the 180-day jurisdictional residency requirement set forth in MCL 552.9(1) had not been satisfied.[7] That

---

[5] A transcript of that proceeding in LC No. 2020-500333-DM was not produced below and thus is not part of the lower court record in this case.

[6] Defendant claimed that there was no governmental documentation for the child's birth.

[7] MCL 552.9(1) states, in pertinent part, that "[a] judgment of divorce shall not be granted by a court in this state in an action for divorce unless the complainant or defendant has resided in this state for 180 days immediately preceding the filing of the complaint. . . ." According to the record, plaintiff moved to Troy sometime in November 2019, and filed his complaint for divorce on May 12, 2020. Thus, the 180-day requirement might not have been satisfied depending on the precise date in November when he moved to Troy.

same day, plaintiff filed a complaint for divorce in the instant case. Also on that day, the trial court entered an order granting plaintiff temporary sole legal and physical custody of CL, and awarding defendant supervised parenting time at Impact Counseling Services.

On December 1, 2020, defendant filed an answer to plaintiff's new complaint, as well as a lengthy affidavit. In the affidavit, she averred, among other things, that plaintiff was not CL's biological or natural father, that she did not know the identity of CL's biological or natural father, and that she and plaintiff were never legally married. The following day, defendant moved "to dismiss with prejudice and order sua sponte relief." The document was haphazard, disjointed, and difficult to follow. But again, defendant averred that she was not married to plaintiff and that he was not the father of CL. The trial court denied defendant's motion, stating that it was "largely non-sensical," "not in the proper form," and failed "to cite relevant facts and legal authority."

On December 30, 2020, plaintiff moved to convert the existing divorce case (-DM suffix) to a custody case (-DC suffix). Plaintiff explained that he thought that the South Dakota divorce action would have been dismissed after he filed the divorce action in Michigan, but that did not happen. Thus, with the South Dakota divorce action still pending, plaintiff sought to have the present divorce action converted into a custody action. The trial court granted the motion and ordered plaintiff to file an amended complaint.

On January 7, 2021, plaintiff filed an amended complaint for custody. Defendant moved to dismiss for lack of jurisdiction or lack of standing, which was very similar in structure and content to the motion to dismiss that she filed earlier, which the trial court denied.

In preparation of trial, the court instructed the parties that trial briefs were due one week before trial and proposed exhibits must be exchanged one week before trial. Defendant did not comply with either requirement. Instead, defendant attempted to upload numerous exhibits 15 minutes before trial started. The trial court disallowed the exhibits as untimely.

A three-day bench trial started on May 17, 2021. During trial, plaintiff introduced evidence of a DNA analysis between himself and CL, which showed that there was a 99.9995% probability that plaintiff was CL's biological father. During her testimony, defendant stated that she and plaintiff could not agree on practically anything with regard to how to care for CL. Regarding the purported adoption of CL to DesJarlais and Buchhorn, defendant testified that (1) DesJarlais "has offered to fully adopt" and that "[p]aperwork is already filed," and (2) that Buchhorn had agreed to be CL's legal guardian. Later, however, defendant said that DesJarlais "has adopted" CL, suggesting that it was a completed event, while later still she stated that DesJarlais and plaintiff "would both be legal parents," suggesting that the event had not yet occurred. At the close of the second day of trial, the trial court instructed defendant to produce any paperwork regarding the purported adoption, but when trial resumed two days later, defendant did not produce anything.

On October 18, 2021, the trial court issued its opinion and order. The court first found that CL had an established custodial environment with plaintiff only. The court highlighted that since June 30, 2020 (i.e., the previous 16 months), plaintiff had provided CL with guidance, discipline, necessities, and parental comfort, whereas defendant remained in Alaska and had not visited or attempted to contact CL in any way. The court then addressed the best-interest factors in MCL 722.23, and found that nine of the 12 factors favored plaintiff, two were neutral or nonfactors, and

one was not applicable. Consequently, the trial court found that there was not clear and convincing evidence to change CL's established custodial environment, and it awarded sole legal and physical custody of CL to plaintiff. The trial court entered a judgment for custody, parenting time, and support on November 4, 2021, which was consistent with the pronouncements from its previous opinion and order.

## II. DISCUSSION OF THE ISSUES[8]

### A. JURISDICTION AND STANDING

Defendant argues that the trial court lacked jurisdiction to hear this case and lacked personal jurisdiction over her and DesJarlais. Defendant also avers that plaintiff lacks standing to bring this action. We disagree with all of these arguments.

There is no preservation requirement for challenging a court's subject-matter jurisdiction. *McFerren v B & B Investment Group*, 233 Mich App 505, 512; 592 NW2d 782 (1999). However, to preserve a challenge to the trial court's exercise of personal jurisdiction, the issue must be raised in a party's first responsive pleading or in a motion under MCR 2.116, or it is deemed waived. MCR 2.116(D)(1); *Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015). Although defendant claimed in her first responsive pleading (i.e., her answer to plaintiff's complaint) that she was providing "notice of special appearance," she never asserted that the trial court lacked personal jurisdiction over her. Instead, she implied there was no subject-matter jurisdiction because of a void marriage. Consequently, defendant's claim that the trial court lacked personal jurisdiction over her is not only unpreserved, it is deemed waived. *Teran*, 313 Mich App at 208.

Generally, there are three standards of review in child-custody cases:

> The great-weight-of-the-evidence standard applies to all findings of fact; under this standard, the trial court's findings will be sustained unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Finally, a trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Wardell v Hincka*, 297 Mich App 127, 133; 822 NW2d 278 (2012) (quotation marks, citations, and brackets omitted).]

But the question of subject-matter jurisdiction is a question of law that this Court reviews de novo. *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). And while the question whether a court has jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.*, is subject to de novo review, a lower court's decision to

---

[8] Preliminarily, we note that defendant has submitted an appellate brief that is at times borderline incoherent. We have attempted to distill the 26 issues mentioned in her statement of the questions presented and correlate them to the nine argument sections in her brief. Significantly, defendant has not challenged the trial court's findings related to the child's established custodial environment or any of the statutory best-interest factors in MCL 722.23. Instead, her primary focus is on issues related to standing and jurisdiction.

exercise that jurisdiction is reviewed for an abuse of discretion. *Chessman v Williams*, 311 Mich App 147, 150; 874 NW2d 385 (2015).

Defendant primarily argues that the trial court lacked subject-matter jurisdiction because there was no valid marriage between herself and plaintiff. Her claim that there was no valid marriage is premised on the assertion that plaintiff was still married to someone else at the time he married defendant. In *Harris*, 242 Mich App at 319, this Court explained that

> [s]ubject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and *is not dependent on the particular facts of a case*. It is fundamental that the classes of cases over which the circuit courts have subject-matter jurisdiction are defined by this state's constitution and Legislature. [Emphasis added; citation omitted.]

Thus, the underlying facts of the case, such as whether the parties were legally married, do not affect the court's jurisdiction. The Legislature has expressly provided circuit courts with the general authority, i.e., jurisdiction, to resolve custody disputes. See MCL 722.27(1). Thus, the trial court in this instance had subject-matter jurisdiction to address the pending custody dispute.

Defendant appears to instead be arguing that because her marriage to plaintiff is void, there is no presumption of paternity for plaintiff. See *Pecoraro v Rostagno-Wallat*, 291 Mich App 303, 305-306; 805 NW2d 226 (2011) ("In Michigan, a child conceived and born during a marriage is legally presumed the legitimate child of that marriage, and the mother's husband is the child's father as a matter of law."). Ignoring the evidence factually showing that plaintiff is indeed CL's biological father, which included (1) defendant's admissions to the South Dakota court that plaintiff is CL's father, and (2) the DNA evidence showing a 99.9995% probability that plaintiff is CL's biological father, defendant has not provided any evidence showing that plaintiff's prior marriage was still in existence as of September 6, 2015, the date she married plaintiff. The documents that defendant submitted to the trial court at best show that plaintiff was previously married to someone else, but they do not show that he still was married as of September 6, 2015. Indeed, on May 10, 2021, just a week before trial, defendant received an e-mail from a Sargent Dustin Schumacher in South Dakota, who was investigating defendant's claim of bigamy. The e-mail stated that Sgt. Schumacher had found a record of plaintiff's prior marriage, but "[t]here is a lot of work left to do before I am able to look at a possible Bigamy crime. . . . I will continue to move forward and keep you updated as I move forward." The only evidence submitted at trial regarding the status of plaintiff's prior marriage came in the form of testimony from plaintiff, who stated that his prior marriage indeed ended in divorce. In short, there is no record evidence to support defendant's allegation that plaintiff was still married to someone else as of September 6, 2015.

Defendant also contends that the judgment of custody is void because the trial court made no finding that plaintiff actually was CL's father. Defendant's position is belied by the judgment itself, which provides that the trial court found that "the material facts" alleged in the complaint were true. Notably, in the amended complaint, plaintiff alleged that the parties were married at the time CL was born and that he was CL's father. Further, the trial court's finding that plaintiff was CL's father is not against the great weight of evidence. The only evidence purportedly showing that plaintiff might not be CL's father was defendant's testimony that she was raped and

impregnated by plaintiff's brother. But the trial court specifically questioned defendant's credibility, and this Court is to defer to the trial court's credibility determinations. *McIntosh v McIntosh*, 282 Mich App 471, 474; 768 NW2d 325 (2009). Aside from that credibility determination, the DNA result makes it virtually impossible to give such testimony any weight.[9]

Defendant also argues that the trial court lacked jurisdiction under the UCCJEA. Defendant's sole contention for this issue is that the UCCJEA "does not apply when there is a void marriage." However, defendant cites no authority for the proposition that parties must have been married for the UCCJEA to apply. Therefore, she has abandoned this argument. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned."). In any event, our review of the UCCJEA fails to disclose any requirement that the parties must have been married for the act to apply.

Lastly, in defendant's reply brief in this Court, she asserts for the first time that the trial court lacked personal jurisdiction over her, plaintiff, and DesJarlais. "Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443-444; 906 NW2d 482 (2017) (quotation marks and citations omitted). Consequently, this argument is not properly before the Court. Moreover, personal jurisdiction affects only defendants, not plaintiffs, because a plaintiff, by filing a complaint, necessarily consents to the court acquiring personal jurisdiction over him or her. See *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) (stating that a party may stipulate to, waive, or implicitly consent to personal jurisdiction). And with regard to defendant, as already explained, she waived any challenge to personal jurisdiction by failing to raise the issue in her first responsive pleading or a motion under MCR 2.116. Finally, DesJarlais is not a party to this action and is not subject to any of the court's orders, so personal jurisdiction over him was not required.

## B. EVIDENTIARY ISSUES

Defendant raises two evidentiary issues on appeal. First, she argues that the trial court erred by admitting plaintiff's DNA evidence because the evidence was obtained from a child who was unlawfully taken, and because the court failed to apply the "utmost scrutiny" in its

---

[9] Similarly, defendant also argues along with her jurisdictional argument that plaintiff lacked standing to bring this action because the marriage was void. Contrary to what defendant suggests, plaintiff's standing to bring an action for custody was not dependent solely on the validity of his marriage to defendant. Standing is assessed at the time the complaint is filed, *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 590, 595 n 54; 957 NW2d 731 (2020), and is a separate concept from subject-matter jurisdiction, *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). The Child Custody Act confers standing on parents to seek custody. See *Aichele v Hodge*, 259 Mich App 146, 165; 673 NW2d 452 (2003). Plaintiff's amended complaint alleged both that CL was born during the parties' marriage and that he was CL's actual biological father. These allegations were sufficient to confer standing on plaintiff to bring an action to seek custody of CL. It is a defendant's responsibility to contest a plaintiff's standing and to provide evidence disproving the plaintiff's allegations. *Id.* As already discussed, defendant did not submit any meaningful evidence to disprove plaintiff's allegations of parentage.

consideration of the admissibility of this evidence. Second, she argues that the trial court erred by excluding her untimely evidentiary submissions. We disagree with both arguments.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Although defendant objected to the admission of the DNA test results at trial, she did so on grounds that the evidence was "misleading," and that she had not received a certified copy of the results. She also questioned the authenticity of the exhibit's certification. Because defendant does not raise the same grounds on appeal, and instead challenges the evidence on other grounds not raised below, the issue is not preserved. However, because she argued that the trial court should not have summarily excluded her exhibits, that aspect of the issue is preserved.

This Court reviews preserved evidentiary issues for an abuse of discretion. *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 86; 776 NW2d 114 (2009). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017). Unpreserved issues, however, are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* at 9.

At the outset, defendant has not adequately briefed the issue pertaining to the admissibility of the DNA evidence. She provides no authority for her position that DNA testing on an individual who was "taken unlawfully" is inadmissible, and she does not cite any authority for her proposition that the trial court was to exact "the utmost scrutiny" to the admission of this evidence. Defendant does not explain what it means to apply "the utmost scrutiny." Consequently, this appellate issue is abandoned. See *Prince*, 237 Mich App at 197. In any event, CL was not "unlawfully taken" because there was a court order entered in Alaska allowing plaintiff to remove the child from Alaska and take him to Michigan. Consequently, CL's removal from Alaska was entirely lawful. Regarding defendant's claim that the court failed to apply "the utmost scrutiny" to the proffered evidence at trial, the trial court asked defendant on what evidentiary grounds she was objecting to the evidence, and the court addressed those grounds, which are not challenged by defendant on appeal. That is all the "scrutiny" that is required under the rules of evidence. Therefore, defendant has not established any error, plain or otherwise.

In her statement of the questions presented, defendant suggests that she is challenging the trial court's decision to exclude her exhibits at trial because they were not shared with opposing counsel by the prescribed deadline. In her brief on appeal, however, defendant does not explain why the trial court's exclusion of the exhibits on this basis was unreasonable, given her complete failure to adhere to the trial court order requiring the exchange of all trial exhibits at least one week before trial. The risk in allowing such untimely exhibits is that it prejudices the other party because that party is deprived of a fair opportunity to prepare for and investigate any of the proposed

exhibits. Defendant has not demonstrated that the trial court's decision to exclude the evidence under these circumstances was an abuse of discretion.[10]

## C. CHALLENGES TO ORDERS IN LC NO. 2020-500333-DM

Defendant next challenges the validity and correctness of orders entered in LC No. 2020-500333-DM.

Defendant argues that the June 25, 2020 order issued in LC No. 2020-500333-DM is invalid because of purported technical defects. As defendant readily concedes, that order was entered in a different case. Defendant never appealed that order, or anything else in LC No. 2020-500333-DM. She cannot directly challenge that order on appeal in a different case. See *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999). Additionally, the validity of the June 25, 2020 order in the prior case has no bearing on the proceedings in the instant case. Although the June 25, 2020 order awarded plaintiff temporary sole physical and legal custody of CL, the court entered a similar order on September 10, 2020, in *this* case, which accomplished the same thing. Thus, regardless of the validity of the June 25 order, plaintiff had temporary custody of CL under the September 10, 2020 order entered in this case.[11]

Defendant also argues that the trial court erred when it dismissed her counterclaim in LC No. 2020-500333-DM. Once again, if defendant believed that her counterclaim was improperly dismissed in LC No. 2020-500333-DM, her remedy was to file an appeal to this Court in that case. She did not, and she cannot now collaterally attack that order of dismissal on appeal in this case. See *Kosch*, 233 Mich App at 353.

## D. CONSTITUTIONALITY OF MCR 1.109(D)(9)(a)

Defendant argues the prohibition against the disclosure of personal identifying information in MCR 1.109(D)(9)(a) is unconstitutional. We disagree.

Because defendant did not challenge the constitutionality of MCR 1.109(D)(9)(a) in the trial court, this issue is unpreserved. As stated above, "[w]e review unpreserved constitutional issues for plain error affecting substantial rights." *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 193; 740 NW2d 678 (2007).

---

[10] We also note that defendant failed to make an offer of proof of the excluded evidence, which also precludes appellate relief. MRE 103(a)(2); *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 94; 697 NW2d 558 (2005).

[11] Defendant avers that the June 25 order being void is important because it then perpetrated a "fraud" on the Alaska court, which, on June 30, relied on the June 25 order in allowing plaintiff to remove CL from Alaska. However, the June 30 Alaska order does not mention any reliance on the June 25 Michigan order, and defendant did not introduce transcripts of the two Alaska hearings held before the June 30 order was entered. Thus, the basis for the Alaska court's order is not apparent from the record.

MCR 1.109(D)(9)(a) provides that "personal identifying information[12] is protected and shall not be included in any public document or attachment filed with the court[.]" During the course of the proceedings in the trial court, defendant filed documents containing personal identifying information of plaintiff. In response, the trial court ordered the court clerk to redact the information and sanctioned defendant for the filings.

Defendant's constitutional challenge is not a facial challenge; it is an as-applied challenge because she claims the rule unfairly limits her ability to prove bigamy. See *Promote the Vote v Secretary of State*, 333 Mich App 93, 117; 958 NW2d 861 (2020) (stating that constitutional as-applied challenges, as opposed to facial challenges, consider the specific application of a facially valid law to individual facts). "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Bonner v City of Brighton*, 495 Mich 209, 238; 848 NW2d 380 (2014) (quotation marks and citation omitted). "All that is necessary, then, is that the procedures at issue be tailored to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case . . . ." *Id*. at 238-239 (quotation marks and citation omitted).

Defendant's argument fails for the simple reason that she has not explained how the inability to file public documents containing personal identifying information impacts her ability to prove or disprove any point. She fails to recognize that she could have submitted into the public record redacted copies of whatever documents she wanted. It is not clear how having such personal information redacted would have adversely affected her ability to prove whatever fact she wanted to prove. For instance, if defendant had some records showing that plaintiff was still legally married to a prior spouse, those documents could have been filed with the particular personal identifying information redacted.[13]

Moreover, while MCR 1.109(D)(9)(a) prohibits the filing of personal identifying information in public documents, MCR 1.109(D)(9)(b) allows a means for filing such information in other forms and for such information to be available to the parties in the case. Thus, to the extent that personal identifying information was necessary for defendant to supply, the court rule expressly allows a way to do so. In sum, the rule does not prevent a party from supplying personal identifying information, it merely restricts a party from supplying that information in a public document. Consequently, defendant has not shown how her due-process rights were plainly violated by MCR 1.109(D)(9).

---

[12] The type of personal identifying information covered under the rule includes date of birth, social security number or national identification number, driver's license number or state-issued personal identification card number, passport number, and financial account numbers. MCR 1.109(D)(9)(a)(*i*)-(*v*).

[13] Indeed, that is essentially what happened here after the court ordered the personal identifying information to be redacted.

## E. TRIAL COURT'S FAILURE TO INVESTIGATE ALLEGATIONS

Defendant avers in her statement of the questions presented that the trial court had an obligation to investigate her claims related to plaintiff's serious mistreatment of her.

While defendant references this "issue" in her statement of the questions presented in her brief on appeal, she offers no argument in support of it. For that reason alone, the issue is deemed abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). In any event, it is not clear what defendant means when she claims that the trial court should have "investigate[d]." Courts are not investigation agencies; they primarily resolve disputes. It is up to the parties to investigate their own claims and defenses, and present evidence to support their theories at trial. To the extent that defendant is claiming that the trial court should have given her testimony more weight, especially where she described various instances of abuse allegedly perpetrated by plaintiff, the trial court specifically questioned defendant's credibility on the issue of domestic violence, and this Court will not interfere with such credibility determinations. *McIntosh*, 282 Mich App at 474. Importantly, as the trial court recognized, there was no other evidence to corroborate defendant's claims of abuse.

## F. NONISSUES

Defendant on appeal raises two "issues" that do not appear to be actual issues for this Court to review.

Defendant avers in her statement of the questions presented that the Department of Health and Human Services (DHHS) threatened her with termination of her parental rights if she did not file the petition for a PPO against plaintiff in Livingston County. While defendant references this "issue" in her statement of the questions presented in her brief on appeal, she offers no argument in support of it. For that reason alone, the issue is abandoned. See *Mitcham*, 355 Mich at 203. Furthermore, given the description of the issue in the statement of the questions presented, it is clear that there is nothing for this Court to review. Initially, this claim relates to an entirely separate case in another county. If defendant wanted to raise any issues related to that case, she should have done so by filing an appeal in that case. See *Kosch*, 233 Mich App at 353. Additionally, it does not appear that defendant is attempting to correct an error by any trial court by raising this issue. Instead, she is alleging that a representative of DHHS harmed her and acted inappropriately. This Court is an error-correcting court. Without any discernable error in the trial court to correct, there is nothing for us to review. See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018) ("As an error-correcting court, this Court's review is generally limited to matters actually decided by the lower court.") (citations omitted). Accordingly, defendant is not entitled to any relief.

In a separate issue, defendant requests that this Court "affirm the truth" that her name is "Maryanne Carmela Bogdan." Again, it does not appear that defendant is requesting a review of any decision or action in the trial court. Consequently, as an error-correcting court, this "issue" is not properly before us. See *id*. Moreover, the instant case was a *custody* action. It is not clear how the trial court in this instance would have had any authority or justification to address the issue of defendant's legal name. That would seem to be an appropriate issue for the South Dakota court to address in the parties' divorce action, which is still pending in that court. See MCL

-11-

552.391 (authorizing a court in a divorce decree to restore to a woman "her birth name, or the surname she legally bore prior to her marriage to the husband in the divorce action, or allow her to adopt another surname if the change is not sought with any fraudulent or evil intent"); SDCL 25-4-47 (authorizing a court in a divorce decree to restore a woman's "maiden name or the name she legally bore prior to her marriage to the husband").

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola